BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

JOSHUA S. HA
Counsel to the Assistant Attorney General
Civil Division

NOAH T. KATZEN
Civil Division, Federal Programs Branch

Attorneys for Defendants

BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Acting Chief, Civil Division
ALARICE M. MEDRANO
Acting United States Attorney
Acting Chief, Complex and Defensive Litigation Section
ALEXANDER L. FARRELL (Cal. Bar No. 335008)
Assistant United States Attorney
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-5557
E-mail: Alexander.Farrell@usdoj.gov

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

LOS ANGELES HOMELESS SERVICES AUTHORITY,

Plaintiff,

v.

DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.*,

Defendant[s].

No. 2:26-cv-07056-DOC-AJR

**DEFENDANTS' OPPOSITION TO PROPOSED PLAINTIFF-INTERVENOR LOS ANGELES CONTINUUM OF CARE'S *EX PARTE* APPLICATION TO SHORTENED BRIEFING SCHEDULE AND SUBMISSION ON THE PAPERS [DKT. 38]**

Honorable David O. Carter
United States District Judge

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY

Proposed Plaintiff-Intervenor Los Angeles Continuum of Care ("LA CoC") had six weeks—since June 18 when LA CoC received HUD's June 18th letter, which was addressed not only to the Los Angeles Homeless Services Authority ("LAHSA"), but also *directly* to LA CoC—to file their own lawsuit or intervene in this action. *See* Dkt. 37-1 ¶¶ 22, 28 (LA CoC Board Chairmen Ben Kay acknowledging LA CoC's notice of HUD's letter). LA CoC had 4 weeks—since July 2 when this Court entered an order setting a preliminary injunction—to move to intervene and or request to participate at the hearing on LAHSA's Motion for Preliminary Injunction ("PI Motion") (Dkt. 8).

Through the present *Ex Parte* Application ("Application"), LA CoC seeks to force Defendants to not only respond to the Application itself but also respond to LA CoC's Motion to Intervene in less than two or three business days, compared to a regularly noticed motion.[1] Dkt. 38. LA CoC also seeks to "participate" in LAHSA's preliminary injunction hearing on Thursday, such as to raise their own arguments on why a preliminary injunction should be entered in favor of both LAHSA *and* presumably LA CoC. But LA CoC has not been approved to file an intervenor complaint. And they have not filed their own motion for a preliminary injunction. As they concede, the only presumable reason why they want to "be heard" on LAHSA's motion for a preliminary injunction, is to orally request expansive preliminary injunctive relief to apply to LA CoC in addition to LAHSA. *See* Dkt. 38, 10:3-8; *see also* Dkt. 37-10, *Prayer for Relief* ¶¶ B-C (proposed intervenor complaint seeking to permanently enjoin government of "*…immediately or otherwise suspending LAHSA from fulfilling the duties delegated to it*

[1] Due to their hasty filing on a Friday evening, it is not clear what specific relief LA CoC seeks as the *ex parte* application states inconsistent relief between their brief and the proposed order. The *ex parte* application requests for the Defendants' motion responses to be due on August 4, 2026, by Noon PT (Dkt. 38, 2:6-10, 10:17-25) whereas the proposed order requests an order to have Defendants' motion responses to be due on August 5, 2026, by Noon PT (Dkt. 38-2, 2:4-17).

*by LA CoC, including serving as the collaborative applicant for the FY 2026 NOFO, conducting the annual Homeless Count, managing HMIS, and managing CES*" and enjoining the government of "*immediately or otherwise taking any remedial measures against LA CoC based on HUD's suspension of LAHSA*"). This is textbook hearing by ambush. LA CoC seeks to parachute into this lawsuit without having to file their own motion for a preliminary injunction or timely filing a joinder to LAHSA's motion.

The Application should be denied as a matter of fundamental fairness. The Motion to Intervene seeks to circumvent due process and reasonable notice to the government as LA CoC now asserts their own APA claims (Dkt. 38-10) and seeks the extraordinary relief of having their Motion immediately granted and or being heard at LAHSA's preliminary injunction hearing. LA CoC's counsel maintains that the sole basis for granting their Application is "within the Court's discretion," that the government should not have any more time to oppose their Motion to Intervene, and that the government should not have any time to prepare a written opposition to their anticipated preliminary injunction request, all because their claims are vaguely "important."

But genuinely important claims do not normally require *less procedural fairness and less civil justice*. They normally require *more procedural fairness and more civil justice*. It is all the more important to get important decisions on important subjects right, at all levels of adjudication, rather than allowing litigants to railroad the Defendants and the Court into a predetermined result that LA CoC's counsel prepared in rigorous secrecy for weeks and then suddenly filed untimely with a hair's breadth of advance notice. *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 489 (C.D. Cal. 1995) (noting that the "abusive use of ex parte motions . . . is detrimental to the administration of justice and, unless moderated, will increasingly erode the quality of litigation and present ever-increasing problems for the parties, their lawyers, and for the court").

LA CoC has likewise failed to establish that extreme exigency warrants *ex parte* relief. LA CoC insists that alleged extreme urgency requires divesting Defendants of

basic procedural rights, after having taken weeks to prepare their own filings. Nowhere in its Application does LA CoC even attempt to acknowledge the prejudice to the government. Fatally, LA CoC has not established how they will be irreparably prejudiced, or how the Court could justify letting them cut "to the head of the line in front of all other litigants and receive special treatment." *Smith v. Compton*, 2023 WL 6369774, at *1 (C.D. Cal. Aug. 24, 2023).

The Application should be denied because LA CoC failed to meet and confer on the underlying Motion to Intervene, seven days in advance, as required by Local Rule 7-3. This admission is shown by their own declaration. *See* Dkt. 38-1 ¶¶ 7-8. By disregarding the Local Rules in an attempt to unfairly prejudice the Defendants and impair the record, LA CoC hopes to force a snap decision on their Motion to Intervene and also to obtain a preliminary injunction separately from LAHSA, all based on a cursory review of hundreds of pages of evidence and a proposed intervenor complaint (Dkt. 38-2 through 38-10), with the aim of hindering the federal government's abilities to defend itself and carry out its mission of responsibly administering nationwide homelessness grant funding.

For these reasons, LA CoC's *Ex Parte* Application should be denied.

## II. THERE IS NO CRISIS WARRANTING *EX PARTE* RELIEF

### A. LA CoC Filed an Improper *Ex Parte* Application and a Motion to Intervene Based on a Non-Emergency, And Insist that the Defendants Could Only Have Two or Three Court Days to Oppose

On the evening of July 31, 2026, LA CoC served Defendants with their first "emergency" motions in this case: an *ex parte* application to shorten the briefing schedule and submission of their papers, as well as their Motion to Intervene. Dkt. 37-38. By filing the Application on a Friday evening, Defendants were initially left with 24 hours to respond to LA CoC's Application, yet LA CoC *only* stipulated to less than a single court day extension to respond by August 3, 2026, at Noon PT. Dkt. 38 pg. 3; Dkt. 38-1 ¶ 8. As to LA CoC's Motion to Intervene, the motion absconds from the notice and

hearing requirement under Local Rule 6-1[2] and instantly prejudiced Defendants' ability to timely oppose under Local Rule 7-9[3].

Moreover, and notably, LA CoC's co-counsel, Public Counsel, used the same ambush tactic in *Perdomo, et al. v. Mullin, et al.*, 2:25-cv-05605-MEMF-SP (C.D. Cal.), where they insisted that the government could have just one day to oppose an immense TRO application that the plaintiffs' counsel had been preparing in secrecy for weeks. Fortunately, the District Court rejected their demand [Dkt. 42] by granting the government's *ex parte* application for more time to oppose [Dkt. 40], although the government was still forced to prepare its opposition over the Fourth of July. Although courts have consistently condemned their improper tactic, LA CoC's counsel continues to place it at the center of their strategy for attempting to obtain preliminary injunctive relief in this District.

The use of this tactic in this matter is particularly abusive. LA CoC was a named recipient of HUD's June 18 Letter, which clearly explained HUD's plan to accept direct applications from service providers in the LA CoC's geographic area for the FY2026 CoC competition. *See* Dkt. 24-23 at 2. LA CoC amended its governance charter on July 14, 2026, to update its processes for designating a collaborative applicant, HMIS Lead, and CES Management Lead, along with other delegated duties, clearly preparing to address the noticed action in HUD's June 18 Letter. *See* Dkt. 37-2 at 2, 11. As LA CoC's counsel acknowledges, LA CoC submitted a response to HUD's June 18 letter on July 17, 2026. *See* Dkt. 38-1 at 2. In other words, LA CoC has known of the HUD letters at issue herein for, at a minimum, roughly six weeks, and it has known about LAHSA's lawsuit for a *month*. LA CoC claims HUD's July 16, 2026 notice email finally made HUD's plan "clear," but does not explain what information was provided therein that was not already known to LA CoC. Even so, that was more than *two weeks*

---

[2] L R. 6-1, the notice of any motion shall be filed not later than twenty-eight (28) days before the date set for hearing.

[3] L.R. 7-9, each opposing party shall file opposing papers not later than twenty-one (21) days before the date designated for the hearing of the motion.

before LA CoC first broached intervention with Defendants. LA CoC argues its untimely claim for *ex parte* relief is justified by a "crisis" caused by HUD, but its conduct over the last six weeks shows none of the urgency of a true crisis.

Simply put, Defendants require fair notice and a responsible opportunity to respond to LA CoC's filings.

**B. LA CoC Has Not Shown They Will Be Irreparably Prejudiced**

The well-recognized standard for reviewing *ex parte* applications in this District is *Mission Power*, which this Court summarized as follows:

> *Ex parte* applications are "rarely justified." The abbreviated procedures allowed by the granting of an *ex parte* application circumvent the "safeguards that have evolved over many decades [ ] built into the Federal Rules of Civil Procedure and the Local Rules." These safeguards include the timelines for "submission of responding papers and for the setting of hearings [ ] intended to provide a framework for the fair, orderly, and efficient resolution of disputes."

*Paige, LLC v. Shop Paige LLC*, No. 2:22-CV-07800-HDV, 2024 WL 4436899, at *1 (C.D. Cal. Aug. 1, 2024) (denying *ex parte* application to shorten time) (citations omitted).[4] Moreover, courts have cautioned against and provided guidance on the harms of parties rushing to court to merits-based *ex parte* relief. *See In re Intermagnetics America, Inc.*, 101 B.R. 191, 193 (Bankr. C.D. Cal. June 1, 1989) ("*Ex parte* applications throw the system out of whack. They impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are

---

[4] *See also Arredondo v. Univ. of La Verne*, 618 F. Supp. 3d 937, 943 (C.D. Cal. Aug. 2, 2022) ("Ex parte applications are solely for extraordinary relief and are rarely justified."); *Est. of Wuxi Chenhwat Almatech Co. v. Prestige Autotech Corp.*, 2022 WL 17363058, at *2 (C.D. Cal. Nov. 3, 2022) ("Ex parte applications are nearly always improper, and the opportunities for legitimate ones are extremely limited"); *MAG Aerospace Indus., LLC v. Precise Aerospace Mfg., Inc.*, 2019 WL 1427272, at *1 (C.D. Cal. Jan. 25, 2019) ("[a]n ex parte application … is appropriate in only rare circumstances").

required to make a hurried response under pressure, usually for not good reason.").

LA CoC cannot show—as they must—that they "will be irreparably prejudiced" if their Motion to Intervene is "heard according to regular noticed motion procedures." *Mission Power*, 883 F. Supp. at 492. LA CoC claims that they will "suffer irreparable prejudice because the outcome of LAHSA's Motion for Preliminary Injunction will directly and immediately affect LA CoC's ability to carry out its congressionally mandated responsibilities." *See* Dkt. 38, 8:8-11. But this is precisely the type of conclusory speculation which should lead the Court to deny the Application. LA CoC could have timely filed a lawsuit or their motion to intervene weeks ago. LA CoC could attend the preliminary injunction hearing as a member of the public, and or an interested party, without having to formally seek intervention. The presumed basis for intervention is specifically because they want to tack onto LAHSA's request for a preliminary injunction.

As it relates to status quo relief to LAHSA and LA CoC, HUD has already stated it has decided to do its best to maintain the status quo by delaying until August 10, 2026, or until this Court rules on Plaintiff's application for a preliminary injunction, whichever is earliest, a final determination on its June 18 letter and whether the LA CoC will be subject to the alternative processes described in the modified NOFO and Appendix III thereto. *See* Dkt. 33 (HUD's objection to LAHSA's unilateral proposed order and status statement). To ensure proper notice to potential applicants, on July 23, 2026, HUD issued a Notice of Modified NOFO, to supersede the notice at ECF No. 31-7. The notice stated that "HUD will withhold a final determination of whether CA-600 [i.e., the LA CoC] meets the requirements of 42 U.S.C. § 11360a or its implementing regulations, until August 10, 2026, or until the relevant court decides whether to grant LAHSA emergency relief, whichever is earlier." HUD will similarly extend the application deadline for eligible applicants in the LA CoC's geographic area to thirty (30) days after the date of HUD's determination whether the LA CoC (or CA-600) meets the statutory and regulatory requirements described in the June 18 Letter. For example, if HUD

makes its determination on August 10, eligible applicants in the geographic area will have until September 9 to apply for the competition. Yet, LA CoC filed an improper *ex parte* Application and the Motion to intervene to crash into this lawsuit without providing fair notice to the Defendants.

The accelerated briefing schedule LA CoC has foisted on the government does not permit in-depth analysis, but LA CoC's *ex parte* filing misrepresents important facts about how the direct-to-HUD process will work. In brief, the LA CoC's claim that having service providers submit applications directly to HUD will "strip the entire LA region of its ability to make its own decisions about how . . . Tier One federal funds will be spent in Los Angeles County," *see* Dkt. 37-1 at 8, is simply inaccurate. LA CoC notes that it has historically prioritized projects providing permanent supportive housing; indeed, *all* of the renewal projects in LA CoC's geographic area are for permanent supportive housing. As a result, LA CoC's preference for permanent supportive housing will likely carry through in Tier One renewals; its claim that HUD will "bypass [its] project ranking and prioritization functions" falls flat. The fact that the portion of CoC funds that are available for Tier One renewals is 60%, not the historical 90%, was *Congress'* choice and has nothing to do with the HUD actions at issue in this case.

Similarly, LA CoC's claim that HUD's direct application plan would "prevent any local input from local representatives," *see* Dkt. 37-1 at 9, is ungrounded. LA CoC is composed primarily of service providers in the geographic area, *the same service providers* who would submit applications directly to HUD and would be free to include "local input" in those applications. LA CoC's reference to "local representatives" can only mean an administrative layer between service providers and HUD.

HUD's plan to accept direct applications for the FY2026 competition is not designed or intended to effect a dramatic change to the CoC funding that would be awarded if LA CoC had a functioning collaborative applicant.

LA CoC's requested participation in the preliminary injunction hearing should be viewed with skepticism, especially because they have not even outlined how *LAHSA's*

proposed preliminary injunction analysis, based on their motion, pursuant to *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008), would apply, if at all, to them. LA CoC has not demonstrated that the Court can take into consideration potentially irreparable harm to third parties such as LA CoC (not an intervenor at this time) as it relates to LAHSA's request for a preliminary injunction. *See, e.g., Gather Church v. Lewis Cty.*, 814 F. Supp. 3d 1154, 1171 n.10 (W.D. Wash. 2025); *Novedades y Servicios, Inc. v. Fin. Crimes Enforcement Network*, 785 F.Supp.3d 785, 820 (S.D. Cal. 2025); *Poeng v. United States*, 167 F. Supp. 2d 1136, 1142 (S.D. Cal. 2001).

Moreover, LA CoC's actions (*i.e.* Dkt. 37-38) are exactly the type of *ex parte* application the *Intermagnetics* court discouraged. Defendants have been forced to make a "hurried response" "for no good reason." LA CoC has had several weeks' notice of HUD's June 18 Letter, or this lawsuit, and of LAHSA's motion for a preliminary injunction. Their requests should have been made weeks ago. Yet their Friday evening filing has manufactured an "emergency" by virtue of LA CoC's unprincipled actions to attempt to participate in this lawsuit on an untimely basis without fair notice. Their claims are not time barred. The relief they ultimately seek could be sought by a regular motion or filing a separate lawsuit against Defendants. Not only is LA CoC's situation not an emergency that justifies "cutting the line" of other litigants with noticed motions, but LA CoC's request to permit two or three court days' to respond to a Motion to Intervene filed on a Friday evening at 9:00 p.m. PT, wastes limited court and party resources.

In addition, the Application should be denied because LA CoC failed to meet and confer on the Motion to Intervene, seven days in advance, as required by Local Rule 7-3. *See* Dkt. 38-1 ¶¶ 7-8. Indeed, "Local Rule 7-3 is not a 'tick the box' administrative burden; instead, it is a valuable tool allowing for the informal resolution of issues and allows the parties and the Court to focus on the issues that are truly disputed between the parties." *F19 Franchising, LLC v. Endo Fitness LL, LLC*, 2023 WL 9319023, at *2 (C.D. Cal. Dec. 8, 2023). For this additional reason, even if the Court grants the Application,

the Motion itself should not be hurried and should be scrutinized for this procedural defect.

Simply put, LA CoC will not be irreparably harmed if they are not immediately imposed into this case.

### C. LA CoC Is at Fault in Creating the Alleged "Crisis"

If any prejudice to LA CoC exists, it is self-inflicted and results from their lack of due diligence. *Goldenwest Logistics, LLC v. Elevation Trucking Servs., Inc.*, 2023 WL 5667861, at *1 (C.D. Cal. July 13, 2023) ("First of all, Plaintiff has failed to establish that it would be 'irreparably prejudiced' absent *ex parte* relief.") (quoting *Mission Power*, 883 F. Supp. at 492). Courts in this District routinely deny *ex parte* applications where, as here, it could have been heard as a regularly noticed motion. *See, e.g.*, *A.J.P. v. Cty. of San Bernardino*, 2024 U.S. Dist. LEXIS 125405, at *4 (C.D. Cal. July 16, 2024) ("*ex parte* relief is still not justified because this matter could have been filed as a regularly noticed motion"); *Santillan v. Am. Honda Motor Co.*, 2023 WL 6369782, at *1 (C.D. Cal. Aug. 17, 2023) ("it is not evident to the Court that Plaintiffs would be irreparably prejudiced by noticing a motion for a date at least a month from now"); *Stewart v. United States*, 2023 WL 3553155, at *3 (C.D. Cal. Mar. 1, 2023) ("Plaintiff has not adequately demonstrated that his cause of action would be irreparably prejudiced if the underlying motion was heard according to regular noticed procedures"); *Lavco Sols., Inc.*, 2022 U.S. Dist. LEXIS 91712, at *3 ("Plaintiff would not be entitled to *ex parte* relief because it has failed to demonstrate irreparable prejudice if it adheres to regularly noticed motion procedures.").

Here, if the issues in the Motion to Intervene and LAHSA's motion for a preliminary injunction were genuinely so urgent to LA CoC, then LA CoC should have filed a lawsuit or filed their motion to intervene much earlier. While in some specific instances it is not possible to give advance notice of a TRO application, that is certainly not the case for LA CoC's Motion, where the record of HUD's letters has been known for weeks.

There is no justification for the LA CoC's effort to complicate the issues to be addressed at LAHA's preliminary injunction hearing and deprive the Defendants of basic civil justice and fairness because of LA CoC's lawyers lack of due diligence, strategic decision to file a motion, and failure to engage in the required meet and confer process—instead privileging maximizing the ambush effect of their filings. LA CoC has long known of their claims and known since at least June 11 or June 18, and at any reasonable time after, the Court could have welcomed a regularly noticed motion.

Under these circumstances, expedited briefing is not necessary or warranted. Just results are more important. *See Mission Power*, 883 F. Supp. at 491 (The Federal and Local Rules "contemplate that regular noticed motions are most likely to produce a just result."). At bottom, LA CoC could have and should have filed a regularly noticed motion, and their failure to do so warrants denial of their *Ex Parte* Application.

## III. CONCLUSION

Defendants respectfully requests that the Court deny Proposed Plaintiff-Intervenor's *Ex Parte* Application in its entirety.

Dated: August 3, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

JOSHUA S. HA
Counsel to the Assistant Attorney General
Civil Division

NOAH T. KATZEN
Civil Division, Federal Programs Branch

BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Acting Chief, Civil Division
ALARICE M. MEDRANO
Acting United States Attorney
Acting Chief, Complex and Defensive Litigation Section

*/s/ Alexander L. Farrell*
ALEXANDER L. FARRELL
Assistant United States Attorney

Attorneys for Defendants

**Local Rule 11-6.2 Certificate of Compliance**

The undersigned counsel of record certifies that this Opposition Brief contains 3,506 words, which complies with the word count set by the Court's Standing Order.

Dated: August 3, 2026

/s/ *Alexander L. Farrell*

ALEXANDER L. FARRELL
Assistant United States Attorney