# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STATE OF WASHINGTON, *et al.*,

Plaintiffs,

v.

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.,*

Defendants.

NATIONAL ALLIANCE TO END HOMELESSNESS, *et al.*,

Plaintiffs,

v.

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*,

Defendants.

C.A. Nos. 26-cv-436-MSM-AEM
26-cv-439-MSM-AEM

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Before the Court are the parties' Cross-Motions for Summary Judgment. (26-cv-436, ECF Nos. 30, 32; 26-cv-439, ECF Nos. 34, 37.)[1] This Memorandum and Order again resolves two related-but-unconsolidated challenges to action undertaken by the

[1] Both sets of Plaintiffs alternatively request a preliminary injunction from this Court. (26-cv-436, ECF No. 30 at 1; 26-cv-439, ECF No. 34 at 1.) Additionally, Plaintiffs in 26-cv-436 only seek partial summary judgment at this time. (26-cv-436, ECF No. 30 at 1.)

United States Department of Housing and Urban Development ("HUD"). Consistent with the prior litigation before this Court, one action involves Plaintiff States, (26-cv-439), and the second involves Plaintiff local governments and nonprofit organizations ("Nonprofit Plaintiffs"), (26-cv-436). Notwithstanding the separate sets of cross-motions for summary judgment, the Court will refer to all Plaintiffs in these cases as "Plaintiffs" and all Defendants as "HUD" with the exception of a limited set of instances where greater specificity is needed.

For the following reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motions for Summary Judgment and GRANTS IN PART and DENIES IN PART HUD's Cross-Motions for Summary Judgment.

## I. BACKGROUND

This Memorandum and Order assumes the reader's familiarity with this Court's June 29, 2026, Memorandum and Order, which outlined and ultimately vacated HUD's attempt to effectuate a pair of Notices of Funding Opportunity ("NOFOs"). *See Washington v. Dep't of Hous. & Urban Dev.*, C.A. No. 1:25-cv-00626/636-MSM-AEM, 2026 WL 1863886 (D.R.I. June 29, 2026). To recap, the Court's Memorandum and Order provided an overview of: (1) the McKinney-Vento Homeless Assistance Act ("MVA") and its subsequent legislative history; (2) HUD's role in carrying out the congressionally-authorized functions surrounding the solicitation and selection of federal grant recipients through the use of NOFOs; and (3) the MVA's emphasis on—and HUD's recent decision to depart from—the "Housing First" approach to addressing America's homelessness crisis. *Id.* at * 1-2. Ultimately,

the Court determined that HUD's prior promulgation of its November 2025 and December 2025 NOFOs violated the Administrative Procedure Act ("APA") based on HUD's arbitrary and capricious action in its issuance of these NOFOs. *Id.* at *3-5.

Following the Court's resolution of Plaintiffs' challenge to HUD's initial attempts to rescind the Housing First policy, Plaintiffs filed these actions seeking to invalidate HUD's issuance of a new NOFO in June of 2026 ("2026 NOFO"). (26-cv-436, ECF No. 1; 26-cv-439, ECF No. 1.) Specifically, Plaintiffs again argue that HUD's issuance of the 2026 NOFO violates the APA, other federal laws, and the Constitution. The alleged defect is the NOFO's departure from the Housing First approach in favor of temporary housing assistance and programs conditioning receipt of housing on beneficiaries' satisfaction of certain criteria. *See generally id.* Critically, Plaintiffs also argue that HUD issued the 2026 NOFO in violation of the APA because it failed to engage in the notice-and-comment process mandated by the MVA. (26-cv-436, ECF No. 1 at 35.)

The Nonprofit Plaintiffs have also brought this action against the Office of Management and Budget ("OMB") and Russell Vought in his official capacity as the OMB's director. 26-cv-436, ECF No. 1 at 9. Plaintiffs take issue with the OMB's decision to allegedly restrict HUD's access to the funds underlying the 2026 NOFO. (ECF No. 1 at 21.) Specifically, Plaintiffs allege that the OMB has issued two "apportionment footnotes" preventing HUD from receiving the funding in conjunction with the 2026 NOFO unless HUD complies with the directives contained in two separate executive orders. *Id.* at 21-22. Aside from Plaintiffs' challenge to the 2026

NOFO itself, Plaintiffs contend that these interagency directives between HUD and the OMB violate the APA.[2] *Id.* at 56-57.

With respect to the content of the 2026 NOFO itself, HUD has maintained its goal of overhauling the Housing First approach and replacing it with programs that emphasize more interim housing solutions and enrollment in services that do not directly relate to providing individuals with shelter. (26-cv-436, ECF No. 30-3 at 20.) However, HUD has attempted to accomplish this goal in a different manner than it did last year. That is, while HUD previously attempted to end the Housing First approach by capping the renewal funds that it would make available for permanent housing, the 2026 NOFO attempts to achieve HUD's objective by creating a $1.3 billion "set aside" for new projects that employ the use of transitional housing and that emphasize enrollment in supportive services. (ECF No. 35-1 at 35-37.) Plaintiffs allege that this "set aside" will divert a vast amount of the funds previously available for permanent housing into these new, less-effective programs and will result in roughly 97,000 people experiencing homelessness. (26-cv-436, ECF No. 30-1 at 9.)

Following Plaintiffs' initiation of these actions and their request for preliminary relief, all parties agreed to forgo interim relief and instead move for summary judgment. (26-cv-436, ECF No 27 at 2.)

---

[2] Separately, Nonprofit Plaintiffs challenged HUD's alleged failure to inform them of their "pro rata estimated grant amount" associated with the 2026 NOFO in violation of 42 U.S.C. § 11386a(b)(2)(A). However, HUD appears to have provided Plaintiffs with this information after the initial filing of this action and Plaintiffs now concede that they no longer seek a ruling on this issue. (ECF No. 33 at 44.)

## II. SUMMARY JUDGMENT STANDARD

A court will grant a litigant's motion for summary judgment when a genuine dispute of material fact does not exist, and the movant demonstrates their entitlement to judgment as a matter of law. *Viscito v. Nat'l Plan. Corp.*, 34 F.4th 78, 83 (1st Cir. 2022). When parties file cross-motions for summary judgment, the court will review each motion separately and will respectively draw both facts and inferences in favor of the non-moving party. *Scottsdale Ins. v. United Rentals (N. Am.), Inc.*, 977 F.3d 69, 72 (1st Cir. 2020). Notwithstanding these procedural steps, courts apply an alternative framework on summary judgment in the context of an APA claim. In such cases, summary judgment provides the court with the ability to engage in a more exacting review of the merits underlying an alleged APA violation. *See Bos. Redevelopment Auth. v. Nat'l Park Serv.*, 838 F.3d 42, 47 (1st Cir. 2016). As a result, the reviewing court will not engage in the typical task of identifying factual disputes but will instead scrutinize the administrative record in order to reach a conclusion on whether the relevant agency's actions violated the APA. *Id.*

## III. DISCUSSION

The Court's review of the record and the parties' arguments reveal that HUD's issuance of the 2026 NOFO violates the APA based on HUD's failure to engage in the notice-and-comment process required by the MVA. *See* 5 U.S.C. § 706(2)(D) (mandating that a reviewing court set aside agency action made "without observance of procedure required by law"). Based on the Court's determination that HUD issued the 2026 NOFO in a procedurally invalid manner, the Court declines to address the

remainder of Plaintiffs' challenges to either the 2026 NOFO itself or OMB's alleged unlawful obstruction of funding. *See Campanale & Sons, Inc. v. Evans*, 311 F.3d 109, 121 n.15 (1st Cir. 2002) (declining to review the substantive challenges to an agency's action after finding issues with its procedural validity).

Among the many provisions governing HUD's conduct, 42 U.S.C. § 11386b provides the framework for HUD's ability to incentivize certain activities and set aside funding for priorities that it deems worthy of extra resources. Specifically, 42 U.S.C. § 11386b(d), entitled "Incentives for proven strategies," provides in relevant part:

> (1) In general
> The Secretary shall provide bonuses or other incentives to geographic areas for using funding under this part for activities that have been proven to be effective at reducing homelessness generally, reducing homelessness for a specific subpopulation, or achieving homeless prevention and independent living goals as set forth in section 11386a(b)(1)(F) of this title.
>
> (2) Rule of construction
> For purposes of this subsection, activities that have been proven to be effective at reducing homelessness generally or reducing homelessness for a specific subpopulation includes--
> (A) permanent supportive housing for chronically homeless individuals and families;
> (B) for homeless families, rapid rehousing services, short-term flexible subsidies to overcome barriers to rehousing, support services for concentrating on improving incomes to pay rent, coupled with performance measures emphasizing rapid and permanent rehousing and with leveraging funding from mainstream family services such as Temporary Assistance for Needy Families and Child Welfare services; and
> (C) any other activity determined by the Secretary, based on research *and after notice and comment to the public*, to have been proven effective at reducing homelessness generally, reducing homelessness for a specific subpopulation, or achieving homeless prevention and independent living goals as set forth in 11386a(b)(1)(F) of this title.

42 U.S.C. § 11386b(d) (emphasis added).

Here, HUD does not dispute that its transition away from the Housing First model falls outside of the first two categories—both of which describe forms of permanent housing. *See* 26-cv-436, ECF No. 32 at 83-87. As a result, the Court determines that HUD's attempt to deemphasize its Housing First approach through the use of its $1.3 billion set aside falls within the third category of activities that governs HUD's ability to create incentives and allocate funding for eligible activities. *See* 42 U.S.C. § 11386b(d)(2)(C). As outlined above, this subsection clearly requires HUD to engage in a public notice-and-comment process as understood within the context of the APA. *Id.* Therefore, the Court determines that HUD violated the APA's requirement to observe proper procedures as required by law when it issued the 2026 NOFO without first engaging in the public notice-and-comment procedure required by the MVA. *See* 5 U.S.C. § 706(2)(D). As a result, this Court must set aside the 2026 NOFO in its entirety.

Nevertheless, HUD resists the Court's conclusion and offers three primary justifications why 42 U.S.C. § 11386b(d) does not require it to engage in the public notice-and-comment process. The Court determines that each of HUD's arguments fail to alter the Court's conclusion.

First, HUD contends that the $1.3 billion set aside does not qualify as a bonus or an incentive as contemplated by the MVA. (ECF No. 32 at 63.) The Court rejects the idea that creating a separate category of funding that exceeds one billion dollars does not "incentivize" potential grant recipients to prepare applications that would

allow it to receive this funding. HUD's decision to set aside this colossal amount of grant funding undoubtedly incentivizes grantees to conform their CoC programs to HUD's goals in order to obtain a realistic chance of obtaining this funding.

Next, HUD offers up its own tortured reading of 11386b(d)(2) to argue that it affords HUD's Secretary with discretion to create new programs that fall outside of the notice-and-comment requirement. *Id.* at 83-85. HUD argues that Congress should have used more explicit language cabining its discretion if it intended for HUD to function in this manner. *Id.* However, the Court rejects HUD's attempt to create an unorthodox reading of the MVA here when the statute's plain and ordinary meaning directs HUD to engage in a public notice-and-comment process after it decides to incentivize "any other activity" outside of the two specified types of permanent housing described before it. 42 U.S.C. § 11386b(d)(2)(C); *see United States v. Gordon*, 875 F.3d 26, 33 (1st Cir. 2017) ("If a statute's plain meaning supplies a plausible interpretation, the inquiry is often at an end.").

Finally, HUD attempts to argue that it *did* in fact engage in a form of soliciting public notice and comment and that it therefore complied with the procedure required by the MVA. (ECF No. 32 at 84-85.) HUD argues that, through the use of public announcements, it informed the public in a more general sense of its intent to overhaul the Housing First approach to combating homelessness and that events subsequently took place where it had the opportunity to receive feedback from the public. *Id.* As the Court expects HUD is well aware, the term notice and comment invokes a concrete set of rules that require administrative agencies to receive

feedback from members of the public in a structured, more formalized setting than their argument would otherwise suggest. *See, e.g.*, *Perez v. Mort. Bankers Ass'n*, 575 U.S. 92, 96 (2015) (noting that the notice-and-comment process involves providing "interested persons an opportunity to participate in the rule making through submission of written data, views or arguments.") (citing 5 U.S.C. § 553). HUD's specious argument that the MVA provides it with the ability to engage in some vague, undefined, and informal version of the notice-and-comment process lacks even marginal support from the text, structure, or history of the MVA. As a result, the Court concludes that HUD's issuance of the 2026 NOFO took place in a procedurally invalid manner in violation of § 706(2)(D) of the APA and that, based on this structural defect, the Court must set aside the 2026 NOFO in its entirety.

While the Court determines that it must vacate HUD's issuance of the 2026 NOFO, it rejects Plaintiffs' request for a permanent injunction against HUD's *future* implementation of the conditions contained within the 2026 NOFO. Although HUD may attempt to issue yet another NOFO that contains these conditions after undergoing the requisite notice-and-comment process, the speculative nature of this potential future harm does not permit the Court to provide the "drastic remedy" of a permanent injunction. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010) ("If a less drastic remedy (such as partial or complete vacatur of [an agency's] … decision) [is] sufficient to redress respondent's injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted.").

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motions for Summary Judgment and DENIES IN PART and GRANTS IN PART HUD's Cross-Motions for Summary Judgment. (26-cv-436, ECF Nos. 30, 32; 26-cv-439, ECF Nos. 34, 37.) The Court therefore sets aside HUD's issuance of the 2026 NOFO in its entirety as violative of the APA. The Court, however, denies Plaintiffs' request for a permanent injunction. Because, as described above, the Court concludes that the 2026 NOFO may not proceed based on its procedural infirmity, it obviates the need for the Court to rule on the other aspects of the parties' motions at this time.

IT IS SO ORDERED.

Mary S. McElroy
United States District Judge

August 7, 2026