BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

JOSHUA S. HA
Counsel to the Assistant Attorney General
Civil Division

NOAH T. KATZEN
Civil Division, Federal Programs Branch

Attorneys for Defendants

BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Acting Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Acting Chief, Complex and Defensive Litigation Section
ALEXANDER L. FARRELL (Cal. Bar No. 335008)
Assistant United States Attorney
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-5557
E-mail: Alexander.Farrell@usdoj.gov

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

LOS ANGELES HOMELESS SERVICES AUTHORITY, a joint powers authority,

Plaintiff,

v.

DONALD J. TRUMP, *et al.*,

Defendants.

No. 2:26-cv-07056-DOC-AJR

**DEFENDANTS' STATEMENT AND PROPOSAL FOR CONDUCT OF FY2026 CONTINUUM OF CARE COMPETITION FOR GEOGRAPHIC AREA OF LOS ANGELES CONTINUUM OF CARE**

Honorable David O. Carter
United States District Judge

Pursuant to the Court's Order (Dkt. 55), Defendants submit this post-hearing statement and proposal for conduct of FY2026 continuum of care competition for geographic area of Los Angeles Continuum of Care (i.e. Defendant's request to submit a proposed timeline and plan for a selection of a collaborative applicant). *See* Dkt. 57, hearing transcript, 141:17-25, 142:1-8)

At the preliminary injunction hearing on August 6, 2026, the Court indicated it was considering transitional arrangements under which plaintiff the Los Angeles Homeless Services Authority (LAHSA) would not serve as the collaborative applicant for service providers in the geographic area of Intervenor the Los Angeles Continuum of Care (LA CoC) for the FY2026 Continuum of Care (CoC) nationwide grant competition.

HUD strongly opposes any arrangement under which LAHSA would have a role in ranking or selecting projects for approval. At the hearing, LAHSA argued that HUD had not, in its June 11, 2026, Letter ("June 11 Letter") suspending LAHSA, identified any failures by LAHSA in its activity ranking and selecting projects for approval as Collaborative Applicant. But the June 11 Letter speaks for itself. It lays out a history—both old and recent—of LAHSA's lack of documentation, poor data collection, and failed performance monitoring. June 11 Letter at 4-8. As to conflicts of interest, HUD has recently suspended and proposed the five-year debarment of LAHSA's former CEO for her actions in connection with the selection and approval of CoC grants for her husband's employer. *Id.* at 10. And, as the June 11 Letter notes, HUD's ongoing investigation has given it reason to suspect that LAHSA's conflict of interest violations are systemic. *Id.*

Those issues provided HUD with adequate evidence to suspect that LAHSA failed to comply with program requirements for financial management controls, internal controls, and conflict-of-interest safeguards. *See* June 11 Letter at 4; *id*. at 10-11 (explaining certifications incorporated into HUD's grant agreements). And those issues led HUD to "determine[] [that] it cannot reasonably rely on LAHSA's ability to operationally and effectively coordinate, manage, distribute, and monitor taxpayer dollars in a responsible manner or to execute the CoC Program's mission to combat

homelessness." *Id*. at 4. An entity suspected of having conflicts of interest and of failing to monitor even its own contracts is a poor choice to rank and evaluate projects for the entire CoC. Thus, the Agency determined that allowing LAHSA to have any part in the 2026 competition, including the ability to select or rank projects and applicants, was not in the public interest and required the immediate action of suspension.

First and foremost, the Court should deny the preliminary injunction and allow the transitional arrangement HUD outlined in its June 18, 2026, Letter, to proceed.

Accepting project applications directly to HUD without a collaborative applicant is, contrary to characterizations offered by Plaintiff and Intervenor, expressly authorized by statute and regulation. Both provide that, if HUD finds that a CoC "for a geographic area does not meet the requirements" imposed by statute or regulation, HUD may directly accept applications from other eligible entities rather than go through a collaborative applicant. —42 U.S.C. § 11360a(c) and 24 C.F.R. § 578.13(a)(3). Some of those "requirements" include "design[ing] a collaborative process for the development of an application," "establish[ing] priorities for funding projects in the geographic area involved," and "participat[ing] in the Consolidated Plan for the geographic area served by the collaborative applicant." 42 U.S.C. § 11360a(f); see also 24 C.F.R. §§ 578.7, 578.9. As explained in the June 11 Letter and the June 18, 2026, Letter, LAHSA's suspension from participating in HUD's programs means that the LA CoC no longer has a collaborative applicant at this time. That means it "does not meet the requirements" of 42 U.S.C. § 11360a and its implementing regulations. HUD can therefore "permit[] other eligible entities to apply directly for grants." 42 U.S.C. § 11360a(c); 24 C.F.R. § 578.13(a)(3).

Allowing HUD to run its direct-to-HUD process has the significant benefit of ensuring that the FY2026 CoC competition can comply with congressional time directives in an orderly manner. As noted at the hearing, delays attendant on identifying a new collaborative applicant for the FY2026 CoC competition threaten to derail the nationwide competition affecting over 400 CoCs across the country applying for roughly $4 billion in

funds to address homelessness. In February, Congress directed HUD to publish the FY26 CoC Notice of Funding Opportunity (NOFO) by June 1, 2026, and then to review applications and make awards by December 1, 2026. The CoC NOFO outlines a national competition in which applications from all of the more than 400 CoCs across the country compete against each other for funding as required by statute. There are approximately 7,000-9,000 individual project applications in the larger competition. By the terms of the statute and subsequent competition, HUD cannot determine which applicants will get funded, let alone make those awards, until all applications have been submitted and reviewed by HUD. There is no way for HUD to make awards prior to completing the review of all applications. How Los Angeles performs in the competition directly affects how the rest of the country performs. It is impossible to separate one group of applications from the entirety because the NOFO and the statute require a national competition between CoCs. If Los Angeles performs well, funding will be directed away from other CoCs towards Los Angeles and vice versa.

HUD set an August 26, 2026, deadline for all consolidated application packages to HUD, which is roughly halfway between the June 1 publication and December 1 award deadline. HUD already made a significant concession by extending this deadline for the LA CoC by two weeks prior to the hearing. If HUD were to extend the application deadline for LA CoC even further, it would cut too deep into the critical 90-day period HUD has to review and score all 400 CoCs and their 7,000-9,000 project applications. By comparison, historically, HUD's intensive application review process has taken roughly four to six months with 50-70 staff working full-time solely on this project. HUD is now required to complete this review in 90 days. This approach is necessary to meet the congressionally mandated December 1 deadline and ensure timely delivery of $4.04 billion in funds to all the other projects around the country.

HUD would like to assure the Court that it is fully capable of administering what the parties have called the "direct-to-HUD" application process. Even when there is a collaborative applicant, the buck stops with HUD, and HUD must itself evaluate each

project that receives CoC funding. HUD therefore has the institutional expertise and capability to review project applications itself. Further, to respond to the Court's concerns that a direct-to-HUD process would be less responsive to local concerns, as noted in prior filings and at the August 6, 2026, hearing, HUD would like to emphasize that it designed its process to respect past local preferences as much as practicable. Congressional appropriations generally require sixty percent (60%) of available funds to be selected by the local continuum, assuming a functioning CoC exists. HUD, in crafting the approach outlined in the June 18 Letter and the related amended NOFO, opted to send that 60% to renewal projects, consistent with LAHSA's past practice. By definition, such projects will be projects selected and approved in prior years. HUD made this choice intentionally to reflect local preferences. HUD's thoughtful approach appropriately balances program-wide interests with deference to local interests.

Regarding LAHSA's other duties, including the Homeless Management Information System (HMIS), the Coordinated Entry System (CES), and the Point-in-Time (PIT) Count, HUD contemplates that the County's Department of Homeless Services and Housing would immediately assume those duties as stated in the County's July 24, 2026, letter to the LA CoC. *See* Dkt. 36.

During the hearing, the Court indicated it was considering allowing LA CoC to identify a new collaborative applicant and ordering HUD to extend the FY2026 application deadline to accommodate that selection process and a subsequent local competition to prepare a collaborative application for the LA CoC. The Court suggested an extension of sixty days, and HUD discussed the possibility of a forty-five (45) day extension. HUD herein clarifies its position as it applies to a forty-five (45) day extension. As noted above, the timeline of the FY2026 nationwide competition means that a forty-five (45) day extension dramatically constrains HUD's review to award funds by the Congressional deadline of December 1. HUD cannot untether Los Angeles from the rest of the country. Allowing forty-five (45) days for the CoC to select a new collaborative applicant and then allowing an undetermined additional extension for that entity to run a local competition

and prepare and submit a collaborative application would produce a combined delay that would, based on HUD's available resources, make HUD's review ahead of the Congressional deadline on December 1 nearly impossible, halting funds to the rest of the country.

Finally, as noted by Intervenor's post-hearing filing, *see* Dkt. 56, the United States District Court for the District of Rhode Island entered orders today vacating HUD's issuance of the NOFO for the Continuum of Care program. *See State of Washington et al. v. HUD*, Case No. 26-CV-439 (D.R.I.), Dkt. No. 34; and *Nat'l Alliance to End Homelessness v. HUD*, 26-CV-436 (D.R.I.), Dkt. No. 41. HUD does not currently anticipate that these rulings will fundamentally alter the logistical considerations described herein.

Given these practical realities, the most pragmatic and least disruptive approach to rewarding funds under these tight congressionally imposed deadlines is to deny the preliminary injunction and allow HUD to follow the statutorily authorized course laid out in HUD's June 18 Letter. To the extent the order would effectively stay the actions described in the June 11 or June 18 letters, Defendants respectfully reserve the right to appeal and seek emergency relief so that it can implement the direct-to-HUD application process.

Dated: August 7, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

JOSHUA S. HA
Counsel to the Assistant Attorney General
Civil Division

NOAH T. KATZEN
Civil Division, Federal Programs Branch

BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Acting Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Acting Chief, Complex and Defensive Litigation Section

*/s/ Alexander L. Farrell*
ALEXANDER L. FARRELL
Assistant United States Attorney

Attorneys for Defendants

**Local Rule 11-6.2 Certificate of Compliance**

The undersigned counsel of record certifies that this Statement contains 1,638 words, which complies with the word count set by the Court's Standing Order.

Dated: August 7, 2026

/s/ *Alexander L. Farrell*

ALEXANDER L. FARRELL
Assistant United States Attorney