Shayla R. Myers (SBN 264054)
Ana Zuniga (SBN 281768)
LEGAL AID FOUNDATION
OF LOS ANGELES
1550 W. Eighth Street
Los Angeles, CA 90017
(213) 640-3983
Email: smyers@lafla.org
azuniga@lafla.org

Mark Rosenbaum (SBN 59940)
Faizah Malik (SBN 320479)
Amanda Mangaser Savage (SBN 325996)
Jonathan Jager (SBN 318325)
Cassidy Bennett (SBN 347811)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
(213) 385-2977
Email: mrosenbaum@publiccounsel.org
fmalik@publiccounsel.org
asavage@publiccounsel.org
jjager@publiccounsel.org
cbennett@publiccounsel.org

Robyn C. Crowther (SBN 193840)
Mary Katherine Planchet (SBN 341006)
Abigail Falk Orozco (SBN 352267)
STEPTOE LLP
633 W Fifth Street, Suite 1900
Los Angeles, CA 90017
(213) 349-9400
Email: rcrowther@steptoe.com
mplanchet@steptoe.com
aorozco@steptoe.com

*Attorneys for Plaintiff-Intervenor Los Angeles Continuum of Care*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

LOS ANGELES HOMLESS SERVICES AUTHORITY, a joint powers authority,

Plaintiff,

and

LOS ANGELES CONTINUUM OF CARE, an unincorporated association

Plaintiff-Intervenor,

v.

DONALD J. TRUMP, et al.

Defendants.

CASE NO: 2:26-cv-07056-DOC-AJR

Hon. David O. Carter

**PLAINTIFF-INTERVENOR LA COC'S REPONSE TO DEFENDANTS' STATEMENT AND PROPOSAL FOR CONDUCT OF FY 2026 COMPETITION [DKT. 59]**

Date: n/a
Time: n/a
Courtroom: n/a

Plaintiff-Intervenor Los Angeles Community of Care (LA CoC) respectfully submits the following response to HUD's August 7, 2026 Proposal for Conduct of FY 2025 Continuum of Care Competition for Geographic Area of Los Angeles Continuum of Care.

HUD's filing represents a dramatic change of course from its previous positions, including one taken just a day before the filing. HUD asks the Court to undermine congressionally-mandated processes before the Court has a chance to even consider the factual or legal arguments or the consequences of adopting its approach, just as HUD has done with the immediate suspension of LAHSA and the remedial measures against LA CoC. The enormous consequences at stake – most especially to the 11,000 formerly homeless individuals who are stably housed by federal dollars – underscore the need for the Court's orderly consideration of the complex legal and factual issues in this case and, if necessary, an orderly transition of responsibilities that preserves rather than disrupts the stability of the CoC program in Los Angeles.

As outlined below, there are several important considerations LA CoC wishes to highlight for the Court in response to HUD's filing. First, although HUD fails to acknowledge it, the August 7, 2026 ruling by the U.S. District Court in Rhode Island in *National Alliance to End Homelessness v. United States Department of Housing and Urban Development*, (*NAEH II*), 26:c-436-MSM-AEM, and *State of Washington, et all, v. Department of Housing and Urban Development*, 2:26-439MSM-AEM will have a significant impact on the initial timeline of this litigation. Second, LA CoC joins LAHSA's request that the Court enter the preliminary injunction or issue a temporary restraining order and hold an evidentiary hearing on the irreparable harm caused by HUD's actions. Finally, LA CoC responds to HUD's argument that the Court should allow HUD's proposed direct to HUD application process against LA COC.

## I. LAST WEEK'S INVALIDATION OF THE FY 2026 NOFO WILL CHANGE THE TIMELINE IN THIS CASE

As LA CoC informed the Court on Friday, Dkt. 56, the District Court in Rhode Island has invalidated the FY 2026 NOFO. *See NAEH II*, Dkt. 56-1, Order Granting Partial Summary Judgment, at 10. The Court found that HUD yet again violated the Administrative Procedure Act ("APA") when it attempted to shift funding away from congressionally-recognized strategies to address homelessness and insert its own policy priorities, without following the notice and comment period required by the law. As such, the district court "set[] aside HUD's issuance of the 2026 NOFO in its entirely as violative of the APA." *Id.* at 10.

HUD notes this ruling in its August 7, 2026 filing but takes the completely incredible position that it "does not anticipate that these rulings will fundamentally alter the logistical considerations described in" its filing. Dkt. 59 at 5. But HUD cannot realistically expect the Court or the parties to accept this claim.

Most fundamentally, by invalidating the FY 2026 NOFO, the ruling cancels the August 26, 2026 deadline for LA CoC to submit the consolidated application to HUD. As of now, there is no pending Notice of Funding Opportunity for the allocation of $4.1 billion dollars in funds appropriated by Congress, which means there is no pending deadline by which a consolidated application must be submitted by LA CoC. Nor has HUD provided this Court with any details about how it intends to allocate the funding by Congress's December 1 deadline. It is unclear whether a new competition will go forward, what the deadlines will be, or how HUD can complete the FY 2026 NOFO competition by that deadline. HUD does not address this at all in its submission to the Court. On the contrary, HUD spends the entire preceding four pages of its submission arguing that the entire 90-day review period allowed under the original FY 2026 NOFO was necessary to complete the original competition by Congress's deadline. This completely undermines its representation to the Court that

the invalidation of the FY 2026 NOFO will not change the "logistical considerations" it outlines in its submission.

This incredible representation to this Court is yet another example of HUD's lack of credibility about what is happening with regards to the allocation of $4.1 billion in CoC funding, which currently supports the ongoing housing stability of hundreds of thousands of formerly unhoused residents around the country. It also underscores HUD's disregard for the chaos its conduct is causing nationally and in Los Angeles. HUD's FY 2025 NOFO was thrown out, in part because HUD failed to take into account the reliance interest in ongoing funding for permanent supportive housing by service providers, local governments, and critically, the hundreds of thousands of unhoused peonow ple who are stably housed because of this funding. *See National Alliance to End Homelessness v. United States Department of Housing and Urban Development (NAEH I)*, 1:25-CV-00636-MSM-AEM (D.R.I., June 29, 2026), Dkt. 99 at 9. Likewise, the District Court in Rhode Island invalidated this year's NOFO because HUD yet again failed to abide by statutory requirements and follow Congress's clear mandate that changes to funding priorities must go through the regulatory process. *See NAEH II*, Dkt. 58, Exh. A. Here, HUD's representation-t-hat its suspension of LAHSA and sdramatically impactcalhift to a direct to HUD application proceregion's ss will not have a dramat ic impact on LA CoC and the homeless response system in Los Angeles disregards the consequences of its conduct and ignores the legally-required procedural processes that exist to ensure stability for the people who need it the most.

Because HUD has not indicated how HUD intends to respond to Friday's ruling in *NAEH II*, there is no way to know what the consequences will be for Los Angeles. It is possible to know, however, that the invalidation of the FY 2026 NOFO *will* impact the "logistical considerations" at issue in this case, as well as LA CoC's ability to secure federal funding for the region's homeless response system.

## II. LA COC JOINS LAHSA'S REQUEST FOR THE PRELIMINARY INJUNCTION OR TRO AND EVIDENTIARY HEARING

LA CoC joins LAHSA's request that this Court enter the preliminary injunction that will preserve the status quo or if the Court finds it necessary, to enter a temporary restraining order and hold an evidentiary hearing that will allow the Court further opportunity to gather evidence about the irreparable harm that HUD's immediate suspension of LAHSA may present. Specifically, while the *NAEH II* ruling has removed the immediacy of the August 26, 2026 deadline for LAHSA to submit the consolidated application, which was the primarily focus of the August 6, 2026 hearing, there remain a number of other specific and significant consequences of HUD's immediate suspension of LAHSA, all of which raise significant questions and none of which HUD has even begun to address, either when it chose to immediate suspend LAHSA or in response to LAHSA's motion for preliminary injunction.

First, there remain a number of outstanding grants to CoC members that were allocated during the FY 2025 funding cycle that have not been executed. Funding already allocated to LA CoC is being withheld from grantees, which is disruptive to unhoused residents. HUD has provided no response to explain when or if these grantees will receive funding or how withholding funding as a result of the immediate suspension supports the public interest. On the contrary, the harm caused by withholding these funds are irreparable—not only to LAHSA and the service providers, but the unhoused residents who are relying on this funding to remain housed.

Second, as LAHSA spelled out in its moving papers and HUD made clear in its June 18, 2026 letter, the LAHSA suspension implicates not only LAHSA's role as collaborative applicant, but also its role as HMIS lead and CES lead. In this role, LAHSA is responsible for carrying out two complex, federally-mandated programs that are critical to LA's homeless response system. By immediately suspending LAHSA, HUD has undermined LA CoC's ability to coordinate the homeless response

system and move people inside. Without these services, which form the backbone of homeless response, unhoused residents throughout the County will remain outside, even as beds remain open and unfilled. HUD's solution to this concern (which it addresses in a single sentence in its August 7, 2026 filing)—to immediately transfer these services to the County—does not consider, let alone address the work necessary to transfer these complex systems from one provider to another or what should happen in the meantime, while that transfer occurs. HUD has demonstrated, yet again, a complete disregard for the practical realities and the consequences of its actions—despite a clear requirement that it take these consequences into account when deciding whether to issue an immediate suspension. *See* 2 C.F.R. § 180.700(c)(requiring a federal agency to consider if the *immediate* suspension is "necessary to protect the public interest").

A preliminary injunction, or at least a TRO through an evidentiary hearing, will ensure that these critically-important systems remain functional while the Court does the work of deciding whether the programs can be operated by LAHSA. And if the Court determines they cannot, then it will give LA CoC and the various stakeholders it represents the opportunity to delegate the responsibility for the systems to another entity that can, all while ensuring an orderly transition of responsibilities and creating more stability for the region's unhoused residents, instead of completely disrupting that stability.

## III. LA COC INTENDS TO CHALLENGE HUD'S REMEDIAL MEASURES AND "DIRECT TO HUD APPLICATION PROCESS"

Rather than filing a "timeline and plan for the selection of the collaborative applicant," as HUD requested it be allowed to submit, *see* Dkt. 57 at 141:20-23 or even updating the Court on the implications of the ruling in *NAEH II*, HUD uses its submission to argue why it should be allowed to take the remedial measures against LA CoC that it proposed in its June 18, 2026 letter. That plan would not select a new collaborative applicant but instead would forgo the congressionally-mandated

coordination of LA CoC's application in favor of projects applying individually to HUD directly.

HUD's attempt to bring this issue before the Court in its August 7, 2026 filing when this was not the intended purpose of the submission should not be well taken. Before Friday, HUD had previously represented to this Court and the public that it "was delaying until August 10, 2026, or until this Court rules on Plaintiff's application for a preliminary injunction, whichever is earliest, a final determination on its June 18 letter and whether the LA CoC will be subject to the alternative processes described in the modified NOFO and Appendix III thereto." Dkt. 33 at 3. But HUD's submission to this Court is clear: HUD has determined it will move forward with remedial measures against LA CoC. And it attempted to use its filing on Friday to seek this Court's permission to proceed.

HUD's unprecedented use of its remedial authority to "ensure the fair distribution of funds," 24 C.F.R. § 578.13, to effectively disband an entire CoC raises considerable factual and legal issues, including as this Court noted on August 6, 2026, whether HUD is punishing Los Angeles, rather than addressing a problem that actually requires remediation. The significance of the legal issues raised by HUD's actions against LA CoC are even greater given HUD's stated intent to integrate the availability of this remedial measure into the NOFO application, as it did when it modified the now-invalidated FY 2026 NOFO to include the unprecedented "direct to HUD" application process. This would allow HUD to use this process nationally, against any CoC HUD determines is out of compliance with applicable regulations. And the consequences of this action against the LA CoC and the 11,000 individuals who rely on CoC funding for housing, shelter, and services, are significant as well.

In light of the complicated legal issues and significant consequences at stake, these issues warrant a formal review by this Court. Now that HUD has dropped the pretense that it has not yet decided whether to take remedial measures against LA

CoC, LA CoC intends to amend its complaint in intervention to add claims under the Administrative Procedures Act, 5 U.S.C. § 705 et seq and the U.S. Constitution, to expressly challenge HUD's implementation of remedial measures against LA CoC. LA CoC also intends to move for a preliminary injunction preventing HUD from implementing the remedial measure against LA CoC. LA CoC intends to file its amended complaint in intervention by August 24th and file a regularly noticed motion for a preliminary injunction by August 31, 2026.[1]

To ensure the Court has the ability to make decisions with the complete record before it, LA CoC reiterates its request to the Court to order HUD to produce the administrative record related to the June 18, 2026 letter forthwith, and in any event, by August 20, 2026, which is the date HUD has been ordered to prepare the administrative record for the proceedings before the Administrative Law Judge challenging LAHSA's suspension. *See* Dkt. 50 at 6. This will allow the case to proceed as expeditiously as possible.

## IV. CONCLUSION

The suspension and remedial measures at the center of this litigation represent another push by HUD to radically deconstruct the congressionally-mandated CoC program and gain control over billions of dollars in federal funding—funding that Congress has continued to vest with local communities since the program was created. HUD's prior attempts have been stopped by both Congress and the Courts. Its latest attempt raises significant legal and factual questions—all of which should be decided in this case *before* HUD is allowed to take control over funding and force radical changes that will have consequences for tens of thousands of Los Angeles's most vulnerable residents for decades to come. Regardless of the ultimate outcome of the litigation, HUD's decision to immediately suspend LAHSA will have significant

[1] If the Court decides that LAHSA's suspension should be stayed or a preliminary injunction should be granted, the Court can of course refrain from deciding Plaintiff-Intervenor's own motion for a preliminary injunction.

consequences for the individuals who rely on CoC funding to escape homelessness. To date, HUD has not provided any explanation why such immediate action was required or why it was in the public interest.

The invalidation of the FY 2026 NOFO provides an opportunity for this Court to consider the significant issues at stake in the case and if one is required, ensure an orderly transition that protects the public's interests, which HUD has to date shown an unwillingness to acknowledge or consider, despite a congressional mandate to do so. Those interests include, most significantly, the unhoused residents who rely on Los Angeles's homeless response system to move off the streets.

Dated: August 10, 2026

Respectfully submitted,

EGAL AID FOUNDATION OF LOS ANGELES

/s/ *Shayla Myers*

Shayla Myers

*Attorneys for Plaintiff-Intervenor*
*Los Angeles Continuum of Care*

PUBLIC COUNSEL

/s/ *Mark Rosenbaum*

Mark Rosenbaum

*Attorneys for Plaintiff-Intervenor*
*Los Angeles Continuum of Care*

STEPTOE LLP

/s/ *Robyn C. Crowther*

Robyn C. Crowther

*Attorneys for Plaintiff-Intervenor*

*Los Angeles Continuum of Care*

**<u>Local Rule 5-4.3.4 Attestation</u>**

I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: August 10, 2026 STEPTOE LLP

/s/ *Robyn C. Crowther*
Robyn C. Crowther