Keri Curtis Axel (Bar No. 186847)
kaxel@waymakerlaw.com
Scott M. Malzahn (Bar No. 229204)
smalzahn@waymakerlaw.com
Sam S. Meehan (Bar No. 307394)
smeehan@waymakerlaw.com
Emily R. Stierwalt (Bar No. 323927)
estierwalt@waymakerlaw.com
WAYMAKER LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
Telephone: (424) 652-7800
Facsimile: (424) 652-7850

Christopher Pelham (Bar No. 241068)
christopher.pelham@nortonrosefulbright.com
Abigail G. Urquhart (Bar No. 310547)
abigail.urquhart@nortonrosefulbright.com
Alex Scandroli (Bar No. 345278)
alex.scandroli@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494

*Attorneys for Plaintiff*
*Los Angeles Homeless Services Authority*

*(Counsel for Defendants and Plaintiff-Intervenor continued on next page)*

WAYMAKER

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| LOS ANGELES HOMELESS SERVICES AUTHORITY, a joint powers authority,<br><br>Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.*,<br><br>Defendants. | Case No.: 2:26-cv-07056-DOC-AJR<br><br>**JOINT STATUS REPORT RE: COMPLETENESS OF ADMINISTRATIVE RECORD**<br><br>Honorable David O. Carter<br>United States District Judge |

BRETT A. SHUMATE
Assistant Attorney General
Civil Division
ERIC J. HAMILTON
Deputy Assistant Attorney General
JOSHUA S. HA
Counsel to the Assistant Attorney General
Civil Division
NOAH T. KATZEN
Civil Division, Federal Programs Branch
BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Acting Chief, Civil Division
ALARICE M. MEDRANO
Acting United States Attorney
Acting Chief, Complex and Defensive Litigation Section
ALEXANDER L. FARRELL
Assistant United States Attorney
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-5557
E-mail: Alexander.Farrell@usdoj.gov

*Attorneys for Defendants*

SHAYLA R. MYERS (SBN 264054)
ANA ZUNIGA (SBN 281768)
LEGAL AID FOUNDATION OF LOS ANGELES
1550 W. Eighth Street
Los Angeles, CA 90017
Telephone: (213) 640-3983
E-mail: smyers@lafla.org
E-mail: azuniga@lafla.org

MARK ROSENBAUM (SBN 59940)
FAIZAH MALIK (SBN 320479)
AMANDA MANGASER SAVAGE (SBN 325996)
JONATHAN JAGER (SBN 318325)
CASSIDY BENNETT (SBN 347811)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Email: mrosenbaum@publiccounsel.org
E-mail: fmalik@publiccounsel.org
E-mail: asavage@publiccounsel.org
E-mail: jjager@publiccounsel.org
E-mail: cbennett@publiccounsel.org

ROBYN C. CROWTHER (SBN 193840)
MARY KATHERINE PLANCHET (SBN 341006)
ABIGAIL FALK OROZCO (SBN 352267)
STEPTOE LLP
633 W Fifth Street, Suite 1900
Los Angeles, CA 90017
Telephone: (213) 349-9400
Email: rcrowther@steptoe.com
E-mail: mplanchet@steptoe.com
E-mail: aorozco@steptoe.com

*Attorneys for Plaintiff-Intervenor Los Angeles Continuum of Care*

WAYMAKER

# JOINT STATUS REPORT

## I. INTRODUCTION

On August 19, 2026, the Court ordered Plaintiff Los Angeles Homeless Services Authority ("Plaintiff" or "LAHSA"), Plaintiff-Intervenor Los Angeles Continuum of Care ("Plaintiff-Intervenor" or the "LA CoC"), and Defendants Donald J. Trump, *et al.* ("Defendants" and, with LAHSA and the LA CoC, the "Parties") to submit, by no later than noon on September 16, 2026, a joint status report "stating their respective positions regarding whether the administrative record is complete." (Dkt. No. 67 at 1.) The Parties met and conferred on September 10, 2026 regarding the completeness of the record lodged with the Court by the Department of Housing and Urban Development ("HUD") on August 24, 2026. (Dkt. No. 74.) Pursuant to the Court's direction, the Parties therefore submit their current positions in turn below.

## II. PLAINTIFF'S POSITION

LAHSA does not believe that HUD's production constitutes the complete administrative record ("A/R") required by the Administrative Procedure Act ("APA"). The A/R HUD produced is materially incomplete and necessitates both supplementation and discovery under the applicable standards of the APA.

### A. The Governing Legal Standard

Under the APA (5 U.S.C. § 706 *et seq*.), there are two relevant grounds to request supplementation of the A/R and extra-record discovery. First, supplementation is warranted when the agency has relevant materials in its possession that would have been before the agency when issuing the final agency decision—including evidence that is contrary to or tends to rebut the rationale for the decision. Second, extra-record discovery is independently warranted when the agency's bad faith or intent is in dispute. Both grounds apply here.

Generally, judicial review in APA challenge cases is confined to "the full administrative record that was before the Secretary at the time he made his



WAYMAKER

decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). The agency must "examine the relevant data and articulate a satisfactory explanation" for its action, including a "rational connection between the facts found and the choice made," and must consider "an important aspect of the problem," including reliance interests and obvious alternatives. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

With respect to completeness, the Ninth Circuit has held that "[t]he whole record includes everything that was before the agency pertaining to the merits of its decision." *Portland Audubon Soc'y v. Endangered Species Comm'n*, 984 F.2d 1534, 1548 (9th Cir. 1993). This includes "all documents and materials directly or indirectly considered by agency decision-makers and . . . evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). *Portland Audubon Society* further reasoned that "[a]n incomplete record must be viewed as a 'fictional account of the actual decisionmaking process.'" 984 F.2d at 1548 (quoting *Home Box Office, Inc. v. Fed. Commc'ns Comm'n*, 567 F.2d 9,54 (D.C. Cir. 1977). "If the record is not complete, then the requirement that the agency decision be supported by 'the record' becomes almost meaningless." *Id.*

Supplementation and completion of the record are warranted where, as here, the agency "deliberately or negligently excluded documents that may have been adverse to its decision," "failed to explain administrative action so as to frustrate effective judicial review," or where background information is needed to determine whether the agency considered all relevant factors. *Deripaska v. Mnuchin*, 2020 WL 7828783, at *2 (D.D.C. Dec. 29, 2020). Where there is a showing of "bad faith or improper behavior," extra-record discovery is independently warranted. *Overton Park*, 401 U.S. at 420.

**B. The Administrative Record Is Incomplete**

The A/R HUD produced includes only a one-sided picture of LAHSA—one that focuses exclusively on evidence supporting the suspension decision—while

excluding materials the agency was statutorily required to consider during its approvals of LAHSA over the years. These excluded materials include evidence that is contrary to HUD's suspension decision and that LAHSA believes will demonstrate HUD deemed LAHSA to be sufficiently responsible when the agency approved transactions with LAHSA, despite HUD having notice of the very evidence it now relies upon from prior years to justify its suspension.

The Court's Order Granting Preliminary Injunction (Dkt. No. 63) is directly on point. The Court found that HUD was required to have evaluated LAHSA's "performance in previous years against the plans and goals established" and to look to factors such as a "history of inadequate financial management accounting practices" and "indications of mismanagement on the part of the recipient" before awarding additional funding to LAHSA. (Dkt. No. 63 at 19) (citing 24 C.F.R. § 583.235(c)(1)).[1] HUD was thus obligated to evaluate LAHSA's capacity and present responsibility with each transaction the agency entered into with LAHSA.

The evaluative materials from those transactions—the assessments, reviews, scoring, and internal deliberations HUD undertook each time it approved LAHSA's CoC applications, renewed grants, or entered new agreements—are a necessary part of the A/R that HUD has not included. These materials are indispensable because they bear directly on whether HUD's abrupt reversal from years of approving LAHSA to immediately suspending it was arbitrary and capricious.

---

[1] As of May 20, 2026, HUD rescinded 24 C.F.R. § 583.235(c)(1), which was in effect when HUD reviewed LAHSA's CoC grantee status. These rules, however, were shifted to the NOFO guidelines. *See* 24 C.F.R. § 578.33(d)(2). Notably, the applicable FY 2024 and FY 2025 CoC Notice of Funding Opportunity ("FY 2025 NOFO") identifies the exact same standards. *See* FY 2024 and FY 2025 Continuum of Care Competition (FR-6800-N-25), issued August 29, 2025, at 64–65. The FY 2025 NOFO explicitly states that when "considering renewal projects for awards, HUD . . . will assess projects using the following criteria on a pass/fail basis: [including] a history of inadequate financial accounting practices [and] indications of project mismanagement." *Id.*

In addition, the specific datapoints HUD relies on in its June 11, 2026 Notice of Suspension would necessarily include more evaluative materials than what HUD produced in the A/R. LAHSA has already pointed to a number of these in contesting the suspension, for example, on March 10, 2025, HUD Community Planning & Development Representative Mary Kate Bavel formally closed out Finding 1A from the 2022 HUD OIG Audit, which pertained to the $3.5 million undistributed CoC funds. (*See* July 10, 2026 Declaration of Christopher Williams; Ex. G). There would clearly be more internal correspondence in HUD's sole possession concerning its evaluation of the findings from the 2022 HUD OIG Audit and decision to close out this finding—none of which were included in the A/R.

An agency cannot "ignor[e] evidence contrary to [its] position" and then present an administrative record that omits that evidence. *Thompson*, 885 F.2d at 555. HUD's failure to include these materials renders the A/R a "fictional account of the actual decisionmaking process." *Portland Audubon Soc'y*, 984 F.2d at 1548. Until and unless HUD supplements the A/R with all relevant materials that address the merits of its suspension decision, LAHSA is entitled under the APA to pursue discovery of these materials.

### C. Specific Categories of Documents for Supplementation

LAHSA intends to seek the following additional categories of documents that bear directly on the completeness of the A/R and the lawfulness of HUD's decision to suspend LAHSA:

- **HUD OIG Audits Subsequent to the 2007 and 2022 Audits.** HUD's June 11, 2026 letter itself references the 2007 and 2022 OIG audits as grounds for the suspension. The A/R should include all OIG audits of LAHSA, including any audits conducted between 2007 and 2022 and after 2022, as well as any HUD responses, close-out determinations, and corrective action plans associated with those audits. These materials were either necessarily "directly

or indirectly considered" by HUD in reaching its suspension decision or ought to have been.

- **HUD Technical Assistance Communications Concerning LAHSA's Programmatic Functions.** HUD has provided technical assistance to LAHSA over the years regarding LAHSA's programmatic functions as Collaborative Applicant, HMIS Lead, CES Coordinator, and PIT Count Administrator. These communications reflect HUD's contemporaneous assessment of LAHSA's capacity and performance and are directly relevant to whether HUD considered LAHSA to be a responsible partner at the time of each transaction.

- **HUD Close-Out Findings from the Office of Community Planning & Development ("CPD").** CPD close-out findings and monitoring reports for LAHSA's grants reflect HUD's own formal evaluations of LAHSA's performance. These materials bear directly on whether HUD considered its prior evaluations of LAHSA as part of its suspension decision, and whether it followed its own procedures. *See* 24 C.F.R. § 578.107.

- **HUD Internal Scoring of LAHSA's Performance and CoC NOFO Application Grading.** Each year, HUD evaluates and scores CoC applications as part of the NOFO competition. HUD's internal scoring and grading of LAHSA's applications over the years reflect the agency's own assessment of LAHSA's capacity and programmatic effectiveness. These materials are part of the "whole record" that was before the agency and must be produced.

**D. Bad Faith and Pretext Support Extra-Record Discovery**

HUD's intent and pretext in deciding to suspend LAHSA are in dispute. (*See*, *e.g.*, LAHSA Complaint, Dkt. No. 1 at ¶¶ 6, 69, 70, 87.) These allegations put into dispute whether HUD's suspension decision was motivated by reasons other than

those stated in the June 11 Notice, including the Trump Administration's broader policy agenda to reform the NOFO award criteria and target CoCs that resist.

In fact, Plaintiffs have already made a showing of bad faith sufficient to support extra-record discovery. As the Court already found, HUD approved LAHSA's registration and entered into new grant agreements with LAHSA as recently as 21 days before suspending it—despite being on notice of the very deficiencies it now cites for decades. (Dkt. No. 63 at 18–20.) The Court expressed that "HUD is leveraging a crisis of its own making to wrest power to itself that Congress expressly granted to local communities." (Dkt. No. 63 at 26.) These findings support the need for extra-record discovery under *Overton Park*, 401 U.S. at 420.

In particular, the dispute over bad faith and pretext warrants discovery into internal communications probative of HUD's intent, including (but not limited to):

- Communications concerning the June 18, 2026 remedial action letter;
- Amendments to the 2026 NOFO and policy directives concerning the same;
- Inter-agency communications that played a role in the suspension decision or otherwise directed HUD to take action against LAHSA;
- Communications between HUD and senior government officials relating to LAHSA or the LA CoC from January 20, 2025 to the present;
- Communications between HUD and any senior government officials relating to the Office of Inspector General Investigation referenced in HUD's June 11, 2026 suspension notice.

**E. Privilege Log**

Insofar as HUD is withholding documents from the A/R on privilege grounds, that withholding must be documented on a privilege log with the same specificity required in ordinary civil discovery. *Amfac Resorts, LLC v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001). The Ninth Circuit has left open that



WAYMAKER

in certain circumstances where the government's intent is in dispute that it is proper to order a privilege log be produced in APA cases. For example, the opinion in *Blue Mountain* affirmed a district court's order denying the production of a privilege log on narrow grounds because the APA challenger "[did] not assert any misconduct by the [agency], nor does it contend that specific documents were improperly classified as deliberative." ties may not introduce new facts, and discovery is ordinarily not available. *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 445 (en banc, 9th Cir. 2024). Despite this outcome, *Blue Mountain* agreed with precedent in the D.C. Circuit that "a showing of bad faith or improper behavior might justify production of a privilege log to allow the district to determine whether excluded documents are actually deliberative." *Id.* (citing *Oceana, Inc. v. Ross*, 920 F.3d 855 (D.C.Circ. 2019)). Notably, the separate opinion in *Blue Mountain* regarding the denial of a rehearing en banc disagreed with the panel's affirmation of the district court order, explaining "if the government wishes to exclude from the record material before the agency as deliberative, it should have to identify those specific documents and justify their exclusion in a log provided to the court." *Id.* at 456. Bad faith and improper behavior on the part of HUD is patently at issue in this case, thus, requiring HUD to produce a privilege log is entirely consistent with *Blue Mountain* and *Oceana*.

The absence of a privilege log is itself an independent basis for finding that the A/R is incomplete, and LAHSA will seek an order requiring HUD to produce one.

**F. LAHSA's Objection to Reciprocal Discovery**

On September 10, 2026, Assistant United States Attorney Daniel Beck represented to LAHSA counsel that any request for discovery in the APA case from LAHSA would be met with HUD propounding its own discovery against LAHSA. LAHSA respectfully disagrees and plans to object to such a position as it is contrary to the framework of the APA. An APA reviewing court reviews only the



WAYMAKER

information that was before the agency when it made its decision, not post hoc rationalizations or evidence. *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).

Thus, judicial review is deliberately one-directional in an APA case: the question is whether the agency's stated rationale is supported by the record that was before the agency, or what ought to have been considered by the agency but was not, not whether additional evidence that was not previously in HUD's possession or considered at the time of suspension might support the decision. Permitting HUD to pursue discovery against LAHSA would improperly transform this case from a review of whether the agency's decision was lawful into a fishing expedition for HUD to buttress its evidence in support of suspension after the fact.

## III. PLAINTIFF-INTERVENOR'S POSITION

LA CoC joins LAHSA's sections and does not repeat those arguments here, instead identifying deficiencies in the A/R that apply specifically to the claims asserted against LA CoC that LAHSA does not address. Many of LA CoC's claims arise from agency actions that are distinct from the suspension decision at the center of LAHSA's case, and the completeness of the record must be assessed separately for each.

LA CoC challenges HUD's June 11, 2026 immediate suspension of LAHSA and, of particular importance to its own claims, HUD's remedial action against LA CoC, outlined in its June 18, 2026 Notice of Findings and Proposed Remedial Action, including the decision to require the "direct-to-HUD" process for FY 2026 for LA CoC ("Remedial Action"). LA CoC challenges these actions on the grounds that they exceed HUD's statutory and constitutional authority, are arbitrary and capricious, and were taken without observance of procedure required by law. HUD's June 11 suspension of LAHSA and its Remedial Action against LA CoC are distinct agency actions. Because completeness must be evaluated action-by-action, LA CoC does not accept that HUD's August 24 production is complete as to *any* of

WAYMAKER

the challenged actions, and it is demonstrably incomplete as to the Remedial Action against LA CoC, including the direct-to-HUD process. Meaningful judicial review of these final agency actions requires a complete record of the materials that were directly or indirectly considered by the decision-makers who selected the direct-to-HUD remedy and determined that no alternative collaborative applicant existed in the region. The production HUD lodged does not contain that material, as detailed below.

LA CoC notes that the volume of documents produced does not establish the completeness of the A/R. Defendants emphasize that they "produced over 1,600 documents" and offer a synopsis of the categories included in the record. But the number of pages produced says nothing about whether the record is complete. Completeness turns on whether the production contains "all documents and materials directly or indirectly considered by agency decision-makers," including "evidence contrary to the agency's position," not on raw volume. *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). Defendants' own synopsis confirms the gap: the categories it describes consist overwhelmingly of materials assembled to support the suspension and the conflict-of-interest findings, while the production contains almost none of the pre-decisional deliberative materials bearing on the Remedial Action against LA CoC, the choice of the direct-to-HUD remedy, or the development of Appendix III, which sets out the direct-to-HUD process. A record that omits the agency's actual decisional analysis is a "fictional account of the actual decisionmaking process," regardless of its length. *Portland Audubon Soc'y*, 984 F.2d at 1548. That the production terminates without explanation at July 15, 2026 underscores that it is facially incomplete.

**A. Defendants Must Produce a Privilege Log.**

Defendants contend that deliberative materials are "not part of the administrative record to begin with" and therefore "not required to be placed on a privilege log," citing *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438,

445 (9th Cir. 2024), and that requiring a log would "contravene the standard presumption that the agency properly designated the Administrative Record," *Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Human Servs.*, 631 F. Supp. 2d 23, 28 (D.D.C. 2009). Defendants read *Blue Mountains* against its holding. As LAHSA correctly notes, the Ninth Circuit held in that same decision that "if the government wishes to exclude from the record material before the agency as deliberative, it should have to identify those specific documents and justify their exclusion in a log provided to the court." *Blue Mountains*, 99 F.4th at 456. Defendants' position also assumes the very point in dispute—that the withheld documents are genuinely pre-decisional deliberative materials outside the record. Defendants have redacted material that is, on its face, decisional inputs directly considered in connection with the Remedial Action, not pre-litigation legal advice, that therefore belongs in the record and must be logged. The presumption of regularity is rebuttable, and it cannot shield redactions that are unaccompanied by any log, that rely on generic document-level labels, and that appear on a memorandum stripped of accurate metadata.

**B. Documents Missing Relevant Metadata.**

AR entry 1615 is a memorandum transmitted on June 11, 2026 at 3:52 p.m. by HUD Office of General Counsel ("OGC") Senior Counsel Michael Ross to Deputy Secretary Andrew D. Hughes and other senior HUD officials, with the transmittal at AR 1614, described as OGC's "recommendations on how to proceed with the continuum of care in light of LAHSA's suspension today." The memorandum recites the statutory background for the CoC competition, quotes 42 U.S.C. § 11360a(c), and presents three "Options," each redacted in full. The document lacks appropriate metadata and instead reflects a "Master Date" of August 24, 2026—the date of service—rather than its true creation date. This memorandum is the only pre-June 18 decisional input in HUD's production bearing on the collaborative-applicant question, and it is a decisional memorandum directly



WAYMAKER

considered by the agency, not pre-litigation legal advice. Its wholesale withholding cannot be sustained; at a minimum, Defendants must produce the native Word version with accurate metadata and provide a log entry with sufficient specificity to evaluate the privilege claim.

### C. Materials Concerning the Remedial Action and the Direct-to-HUD Remedy

To complete the record for the Remedial Action, Defendants must produce the surrounding and underlying deliberative materials discussing or analyzing the Remedial Action and the agency's selection of the direct-to-HUD remedy. Those materials include analyses, drafts, and options papers, as well as emails, text messages, and other internal or informal communications discussing Los Angeles, the CoC competition, LAHSA, the Remedial Action, and the selection of and potential consequences of the direct-to-HUD remedy. This would include communications with any service providers in Los Angeles related to the potential direct-to-HUD application process. It would also include HUD's determination that no other potential collaborative applicant existed in the LA region. The record contains few such internal communications despite the significance of the June 18 action and no external communications related to the direct-to-HUD application process. Two produced documents confirm the existence of the missing materials: the June 17, 2026 12:36 p.m. McKenney-to-Kurtz email (AR 1610) proposing remedial action under § 11360a(c), and the July 15, 2026 McKenney-to-Kurtz memorandum (AR 1611) recommending publication of the modified NOFO with Appendix III. Both were produced in full and, on their face, reflect a deliberative process that references or presupposes analyses, drafts, options papers, and correspondence considered by Assistant Secretary Kurtz in issuing the June 18 notice. Those materials are absent from the production and must be produced; to the extent no such materials exist, Defendants should expressly confirm that fact in writing.

**D. Pre-Suspension Deliberative Materials Bearing on the Choice of Enforcement Mechanism**

HUD's production is devoid of drafts, memoranda, briefing decks, options papers, and internal correspondence within HUD OGC, HUD's Office of Community Planning and Development ("CPD"), the Office of the Deputy Secretary, HUD's Suspending and Debarring Official ("SDO"), and the Office of the Secretary bearing on the decision to suspend LAHSA and, critically for LA CoC, the choice between the OMB-wide suspension regime at 2 C.F.R. Part 180 and the CoC-specific enforcement mechanism at 24 C.F.R. § 578.107. That choice of mechanism directly shaped the remedial path that led to the June 18 action against LA CoC. The production contains, at most, a handful of informal communications discussing Los Angeles, the CoC competition, LAHSA, or the suspension, and it includes no separate public-interest determination memorandum, no delegation memorandum, no SDO concurrence or recommendation, and no explanation for why the Deputy Secretary rather than the SDO signed the suspension notice. To the extent these materials exist, they were necessarily "directly or indirectly considered" and should have been produced.

**E. Appendix III Policy-Criteria Development**

To the extent Defendants intend to rely on the creation of Appendix III to defend against the APA claims—as they have done in their Motion for a Stay of the Preliminary Injunction at the Ninth Circuit—Defendants must produce all documents related to the creation of Appendix III. That production must include documents concerning the Tier 1 and Tier 2 ranking priorities; the decision to prioritize renewal projects in Tier 1, which HUD has asserted was based on the LA CoC's past ranking priorities; and the development and evidentiary or efficacy basis for the rankings, including the "Protecting Public Safety" scoring factors (awarding up to 15 points for clearing tents and encampments, decreasing public drug use through law enforcement, and involuntary-commitment standards), the "Advancing



WAYMAKER

Recovery by Prohibiting Illicit Drug Enablement" five-point bonus (banning safe consumption sites and harm reduction), and the synthetic "median score" mechanism. Defendants must also produce any documents relating to or referring to the creation of the Appendix and its ranking priorities, as well as any legal analysis of Appendix III's consistency with the CoC statute, 42 U.S.C. § 11360a, 24 C.F.R. Part 578 (including §§ 578.53 and 578.65), and the parent FY2026 NOFO.

### F. Defendants' Proposed Schedule Should Not Foreclose Record Completion

Defendants ask the Court to adopt the proposed briefing schedule and to decline to order any additional discovery. LA CoC does not object to an orderly briefing schedule, but the Court should not adopt a schedule that requires the parties to brief the merits on an admittedly incomplete record. Because meaningful review of the Remedial Action depends on materials that HUD has not produced, LA CoC respectfully requests that the Court first order HUD to complete and supplement the record and to produce a compliant privilege log, and then set or adjust the briefing schedule so that opening briefs are due only after record-completion and privilege-log disputes are resolved.

## IV. DEFENDANTS' POSITION

### A. Summary of the AR

The lodged AR is complete, and no additional discovery is necessary in this APA action. See Dkts. 74; 74-1. Defendants produced over 1,600 documents that establish HUD's decision-making process regarding LAHSA's suspension appeal, including both the June 11 and June 18 letters. Although all the records are relevant and directly responsive to the scope of the AR, below is a synopsis of the records included in the AR.

- The AR includes the June 11, 2026, Notice of Immediate Suspension, along with the thirty-four (34) exhibits attached thereto. AR 1 – AR 1.34.

- Notices of Immediate Suspension and Proposed Debarment served onto LAHSA's former CEO Dr. Va Lecia Adams Kellum and on her husband Edward Kellum, along with their responses and attached exhibits. AR 1.33 – AR 3.9.
- The conflict-of-interest regulation for the Continuum of Care program and correspondence between LAHSA and HUD's Los Angeles Field Office regarding conflicts of interest, including the conflict involving Dr. Adams Kellum and Mr. Kellum. AR 4 – AR 11.
- The pleadings in the action before HUD's Office of Hearings and Appeals (OHA) in which Dr. Adams Kellum and Mr. Kellum challenge their suspensions and proposed debarments. AR 12 – AR 18. Respondents' proposed exhibit list for the OHA Action is also included in the AR. AR 385.
- Applications and grant agreements LAHSA submitted to, and executed with, HUD for fiscal years 2022 – 2024, a period relevant to Dr. Adams Kellum's tenure as LAHSA's CEO. These documents include many relevant certifications referenced in the June 11 Letter. AR 19 – AR 213.
- Materials reflecting HUD's review of LAHSA's conflict-of-interest practices more broadly. LAHSA Commission, Special Commission, and Committee meeting minutes. Those minutes contain examples of LAHSA's practice of recusal for conflicts of interest affecting LAHSA's Commissioners; which is also referenced in the June 11 Letter. AR 214 – AR 290.
- Recent news articles regarding LAHSA, many of which were cited in the June 11 Letter. AR 291 – 365.
- Demand letters by former LAHSA employees seeking relief for asserted misconduct by LAHSA and by Dr. Adams Kellum. AR 366 – AR 367.

- Materials in the AR related to LAHSA's suspected violations, as discussed in the June 11 letter. HUD reviewed many entries in the docket of *LA Alliance v. City and County of Los Angeles*, Case No. 2:20-cv-02291-DOC-KES (C.D. Cal.). AR 368 – AR 384.
- As part of HUD's investigation into LAHSA's conflict-of-interest practices, in April 2026, HUD issued separate records requests to LAHSA and to four of its CoC subrecipients. HUD also requested additional information in connection with a request from LAHSA for a conflict-of-interest waiver related to Commissioner Stephanie Graves. AR 386 – AR 1601.
- An important part of the basis for the June 11 Letter was the pendency of an investigation into LAHSA by HUD's Office of Inspector General (OIG). The AR includes communications between HUD and HUD-OIG that demonstrate the commencement of that investigation. Privileged communications are redacted. AR 1602 – AR 1609.
- In light of LAHSA's suspension, HUD considered options for how to conduct the CoC FY 2026 competition in a way that would mimic the status quo for service providers in the geographic area of the LA CoC. Documents and communications included in the AR demonstrate the agency's approach, as explained in the June 18 Letter and Appendix III of the most recent FY 2026 Notice of Funding Opportunity (NOFO). AR 1610 – AR 1619.

Therefore, and as explained below, this Court should not exercise its discretion to allow discovery in this action.

**B. APA Exceptions to Allow for Discovery Do Not Apply and Are Not Necessary**

None of the Ninth Circuit's narrow exceptions to receiving extra-record evidence apply to this case. *See Lands Council v. Forester of Region One of the U.S.*

*Forest Serv.*, 395 F.3d 1019, 1030 (9th Cir. 2005). LAHSA and LA CoC's request for extra-record discovery fail to "identify the allegedly omitted materials with sufficient specificity and identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record." *Oceana, Inc. v. Pritzker*, 2017 WL 2670733, at *2 (N.D. Cal. June 21, 2017) (citation modified).

And because deliberative materials are "not part of the administrative record to begin with," they are "not required to be placed on a privilege log." *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 445 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1048 (2025) (internal citation omitted) (emphasis added). "As one Court succinctly explained, 'requiring the United States to identify and describe on a privilege log all of the deliberative documents would invite speculation into an agency's pre-decisional process and potentially undermine the limited nature of review available under the APA.'" *Stand Up for California! v. United States Dep't of Interior*, 71 F. Supp. 3d 109, 123 (D.D.C. 2014) (quoting *Great Am. Ins. Co. v. United States*, 2013 WL 4506929, at *9 (N.D. Ill. Aug. 23, 2013)). Additionally, to require the production of a privilege log would "contravene[ ] the standard presumption that the agency properly designated the Administrative Record." *Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Human Servs.*, 631 F. Supp. 2d 23, 28 (D.D.C. 2009) (internal quotation marks omitted); *see McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) (holding that designation and certification of the administrative record is "entitled to a presumption of administrative regularity").

Even if LAHSA contends the mere pleading of violation of the Separation of Powers doctrine, and violations of the Take Care Clauses of the Constitution, as well as violation of the Tenth Amendment suffices, these constitutional claims do not exist outside of the APA. LAHSA's separation of powers claims is just to recast the statutory claims as constitutional ones. It adds nothing to LAHSA's statutory

claims under the APA. But even under LAHSA's view of the facts, case law does not support the proposition that every action by an agency is in excess of its statutory authority is ipso facto in violation of the constitution. If every statutory compliance issue triggered separation of powers concerns, virtually all APA cases would balloon into disputes of constitutional proportions.

Therefore, the proposed briefing schedule based on the AR is still the appropriate schedule to be entered.

**C. Defendants' Position on the Case Schedule**

Defendants request that the Court adopt the Court's proposed briefing schedule (Dkt. 67) and should not enter an order allowing for additional discovery:

- Plaintiff and Intervenor's separate Opening Briefs will be due by November 3, 2026.
- Defendants' Opposition Briefs will be due by December 3, 2026.
- Plaintiff and Intervenor's separate Reply Briefs will be due by December 22, 2026.
- Trial on the briefs: February 23, 2027, at 9:00 a.m. in Courtroom One at the Felicitas and Gonzalo Mendez United States Courthouse (formerly known as the First Street Courthouse).

To be clear, Defendants do not believe additional discovery is necessary in this case. If, however, the Court believes that additional discovery is necessary, Defendants reserve their rights under Federal Rules of Civil Procedure 26-37, 45, to engage in taking discovery against LAHSA, LA CoC, and any relevant third parties, including but not limited to Los Angeles City and Los Angeles County entities and officials. The Court's proposed schedule implies that discovery is not one sided: "Discovery completion, including resolution of any motions to compel and completion of follow-up discovery: January 11, 2027." Dkt. 67.

**D. Additional Scheduling Deadlines**

Defendants note their responsive deadlines to the complaints. Defendants intend to file a response to LAHSA's Complaint (Dkt. 1) on or by October 2, 2026, in accordance with when they were served under Fed. R. Civ. P. 4(i) and when they must respond under Fed. R. Civ. P. 12(a)(2).

Defendants and LA CoC submitted a stipulation, subject to approval of the Court, to extend the deadline to file a response to LA CoC's First Amended Complaint (Dkt. 80) on or by October 2, 2026. Dkt. 81.

Dated: September 16, 2026

WAYMAKER LLP

By: */s/ Keri Curtis Axel*
KERI CURTIS AXEL
*Attorneys for Plaintiff*
*Los Angeles Homeless Services Authority*

Dated: September 16, 2026

NORTON ROSE FULBRIGHT US LLP

By: */s/ Chris Pelham*
CHRIS PELHAM
*Attorneys for Plaintiff*
*Los Angeles Homeless Services Authority*

Dated: September 16, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

JOSHUA S. HA
Counsel to the Assistant Attorney General
Civil Division

NOAH T. KATZEN
Civil Division, Federal Programs Branch

BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Acting Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Acting Chief, Complex and Defensive Litigation Section

*/s/ Alexander L. Farrell*
ALEXANDER L. FARRELL
Assistant United States Attorney

Attorneys for Defendants

Dated: September 16, 2026

Respectfully submitted,

LEGAL AID FOUNDATION OF LOS ANGELES

By: */s/ Shayla Myers*
SHAYLA MYERS
*Attorneys for Plaintiff-Intervenor Los Angeles Continuum of Care*

* Pursuant to Local Rule 5-4.3.4(2), the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.