# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the United States Department of Housing and Urban Development (HUD), Donald J. Trump in his official capacity as President of the United States of America, Scott Turner in his official capacity as the Secretary of HUD (collectively the United States), the Los Angeles Homeless Services Authority (LAHSA), and the Los Angeles Continuum of Care (LA CoC) (all together the Parties), through their authorized representatives.

## I. RECITALS

WHEREAS:

In the Continuum of Care Program, HUD promotes the goal of ending homelessness by making grants to fund efforts by nonprofit service providers and local governments, which organize along with other stakeholders in a geographic area to form a Continuum of Care (CoC).

LA CoC is the CoC for much of the greater Los Angeles area.

LAHSA is a joint powers authority created in 1993 by the City and County of Los Angeles to, among other things, receive and manage HUD funding through the CoC and other programs. LAHSA has served as the LA CoC's Collaborative Applicant, Homeless Management Information System (HMIS) Lead Agency, Coordinated Entry System (CES) Management Entity, and Point-in-Time (PIT) Count Administrator.

On June 11, 2026, HUD issued LAHSA a Notice of Immediate Suspension Pending Investigation under 2 C.F.R. § 180.700 *et seq.*, informing LAHSA that it was immediately suspended from future participation in procurement and nonprocurement transactions as a participant or principal, with HUD and throughout the Executive Branch of the Federal Government, pending the outcome of an

investigation being conducted by HUD's Office of Inspector General (HUD OIG) (June 11 Letter).

On June 18, 2026, HUD issued LA CoC a Notice of Findings and Proposed Remedial Action noting HUD's intent to take remedial action in light of LAHSA's suspension to allow eligible entities in the geographic area to submit CoC grant requests directly to HUD (June 18 Letter) rather than through a consolidated application submitted by a Collaborative Applicant like LAHSA.

On June 29, 2026, LAHSA sued the Defendants in the United States District Court for the Central District of California, challenging the June 11 and June 18 Letters.

On July 17, 2026, LA CoC submitted to HUD a Response and Objection to the June 18 Letter.

LA CoC was granted intervention in the District Court Action as a plaintiff-intervenor on August 6, 2026. LA CoC filed a complaint in intervention on August 10, 2026, which it amended on August 31, 2026, joining LAHSA's challenge of the June 11 and June 18 Letters.

LAHSA requested an administrative hearing to review its suspension, and, on July 17, 2026, HUD referred that request to HUD's Office of Hearings and Appeals. Therein, HUD filed a complaint on August 10, 2026, and LAHSA filed an answer on September 9, 2026.

On August 13, 2026, the judge in the District Court Action entered an Order Granting Preliminary Injunction (PI Order), which, among other things:

- Ordered HUD to distribute $241 million that the court considered to have been "earmarked for the LA CoC by Congress for Fiscal Year 2026 via the priorities outlined in LA CoC's Collaborative Application;"

- Ordered that LAHSA temporarily remain as LA CoC's Collaborative Applicant "through the submission of the 2026 Collaborative Application" and, during the pendency of the preliminary injunction, as HMIS Lead, CES Coordinator (which is the same role elsewhere referred to herein as CES Management Entity), and PIT Count Administrator;
- Ordered LA CoC to give notice that it is accepting applications for the roles described above for the Fiscal Year 2027 CoC nationwide grant competition;
- Ordered HUD to execute signed agreements for LA CoC grants it had previously awarded for Fiscal Year 2025 but had not executed at the time of LAHSA's suspension, and to do so "forthwith."

On September 15, 2026, LAHSA's Commission voted not to submit an application to continue its CoC leadership roles to LA CoC under the application process referenced above.

On October 13, 2026, LA CoC's general membership voted to designate the County of Los Angeles Department of Homeless Services and Housing (HSH or "the County") as LA CoC's Collaborative Applicant, with a confirmation that the County would also perform the role of PIT Count Administrator. On October 26, 2026, LA CoC's general membership voted to designate the County as both the HMIS Lead Agency and the CES Management Entity.

In the Appeal, the Ninth Circuit initially granted an administrative stay of the PI Order, but, on September 24, 2026, denied a stay pending appeal. In doing so, the Ninth Circuit modified the PI Order to clarify that HUD was not required to disburse any of $241 million the district court considered "earmarked," but rather that HUD was "directed to proceed with the FY2026 competition in accordance with the applicable appropriations act."

HUD extended the application deadline for the FY2026 competition to October 14, 2026, for LA CoC alone. On October 14, 2026, LAHSA submitted a consolidated application on behalf of the LA CoC for the FY2026 CoC competition.

On September 29, 2026, HUD executed and transmitted to LAHSA the outstanding FY2025 grant agreements pursuant to the PI Order.

HUD and LAHSA have agreements in force for certain grants in Fiscal Year 2024 and Fiscal Year 2025 whose period of performance has not yet expired.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

NOW, THEREFORE, it is hereby AGREED, by and among the Parties to this Agreement, through their respective attorneys, subject to the final approval of the Court, in consideration of the benefits flowing to the Parties from the Agreement, that this Agreement constitutes a full and complete settlement of the Actions and release of the Settled Claims, upon and subject to the following terms and conditions:

## II. DEFINITIONS

Wherever used in this Agreement, the following terms have the meanings set forth below:

**A. "Actions"** means the District Court Action and the OHA Hearing.

**B. "Agency Actions"** means the June 11 Letter and the June 18 Letter.

**C. "Agreement"** means this Settlement Agreement.

**D. "Appeal"** means the appeal of the preliminary injunction order filed in the United States Court of Appeals for the Ninth Circuit, No. 26-5367.

**E. "Defendants"** means the Defendants Donald J. Trump, in his official capacity as President of the United States of America; the United States Department of Housing and Urban Development (HUD); and Scott

Turner, in his official capacity as the Secretary of the U.S. Department of Housing and Urban Development; and their successors.

F. **"Defendants' Counsel"** means the United States Attorney's Office for the Central District of California and the United States Department of Justice.

G. **"District Court Action"** means the lawsuit filed in the United States District Court for the Central District of California, No. 2:26-cv-07056-DOC-AJR.

H. **"Effective Date of Settlement"** or **"Effective Date"** means the date of entry by the Court of the Approval of Settlement Agreement approving the Agreement in all material respects and dismissing the Settled Claims.

I. **"HUD-Assisted Activity"** refers to any activity funded directly or indirectly, in part or in whole, with HUD funding.

J. **"OHA Hearing"** means the administrative hearing proceeding filed in the United States Department of Housing and Urban Development Office of Hearings and Appeals, No. 26-AF-0612-DB-010.

K. **"Parties"** means Plaintiff, Plaintiff-Intervenor, and Defendants.

L. **"Plaintiff"** means Los Angeles Homeless Services Authority in its capacity as Plaintiff in the District Court Action and as Respondent in the OHA Hearing.

M. **"Plaintiff's Counsel"** means counsel for Los Angeles Homeless Services Authority, Plaintiff in the District Court Action and Respondent in the OHA Hearing: Keri Curtis Axel, Scott M. Malzahn, Ashley E. Martabano (Waymaker LLP); Christopher Pelham, Abigail G. Urquhart, Alex Scandroli (Norton Rose Fulbright US LLP); and their successors.

N. **"Plaintiff-Intervenor"** means the Los Angeles Continuum of Care (CA-600) in its capacity as Plaintiff-Intervenor in the District Court Action.

O. **"Plaintiff-Intervenor's Counsel"** means counsel for the Los Angeles Continuum of Care, Plaintiff-Intervenor in the District Court Action: Shayla Myers, Stephanie Horwitz (Legal Aid Foundation of Los Angeles); Mark Rosenbaum, Faizah Malik, Amanda Mangaser Savage, Jonathan Jager (Public Counsel); Robyn C. Crowther, Abigail Falk Orozco (Steptoe LLP); and their successors.

P. **"Principal"** means any member of a governing body, such as a board or commission, and the highest ranking individual responsible for an organization, whether that individual is referred to as the Chief Executive Officer, Executive Director, or by another title.

Q. **"Senior Management"** refers to the highest tier of leadership in an organization below the Principals, that is responsible for overseeing the operations of the organization and includes, at a minimum, the senior financial officer or director (e.g., Chief Financial Officer) and the most senior person responsible for overseeing or supervising programs (e.g., Director of Programs or Programming or Chief Program Officer).

R. **"Settled Claims"** means any and all claims for relief of any kind arising out of the alleged statutory and constitutional violations asserted by Plaintiff and Plaintiff-Intervenor in the District Court Action and any right or claim to challenge the Agency Actions in any forum, including in the OHA Hearing.

## III. SUBSTANTIVE PROVISIONS

### A. LA CoC's Consolidated Application for the FY 2026 CoC Competition

1. HUD will use LAHSA's consolidated application on behalf of LA CoC for the FY2026 CoC competition and will award funds pursuant to the 2026 appropriations act, the relevant Notice of

Funding Opportunity (NOFO), and other authorities, and will consider the specific parts of that application for LAHSA in its roles as Collaborative Applicant, grant applicant and administrator, HMIS Lead, PIT Count Administrator, and CES Management Entity, notwithstanding the temporary suspension noticed in the June 11 Letter or remedial measures for LA CoC noticed in the June 18 Letter.

**2.** LA CoC acknowledges the representations, certifications, and statements made on its behalf by LAHSA in the consolidated application for the FY2026 CoC competition, and acknowledges that the transfers of grants and responsibilities from LAHSA to the County or another entity as provided for herein do not affect or alter the scope or efficacy of those representations, certifications, and statements, provided that:

**a.** Nothing in this Agreement affects the authority of the United States, including HUD, to take enforcement action based on potential violations of the Controlled Substances Act, 21 U.S.C. § 801, *et seq*;

**b.** Nothing in this Agreement shall affect HUD's scoring of LA CoC's consolidated application for the FY2026 CoC competition, which shall be performed in the ordinary course and according to the 2026 appropriations act, the relevant NOFO, and other authorities, and which shall not be influenced by LAHSA's temporary suspension noticed in the June 11 Letter or by remedial measures for LA CoC noticed in the June 18 Letter; and

c. Nothing in this Agreement shall require LA CoC or LAHSA to comply with criteria in the FY2026 NOFO earlier or in anyway other than as required under the terms of the FY2026 CoC competition or other applicable law.

B. **LAHSA's Grant Administration**

1. Neither LAHSA nor LA CoC will seek, from HUD or otherwise, an extension of the period of performance for any of LAHSA's unexpired FY2024 grant agreements.
2. At the expiration of the period of performance for each of LAHSA's unexpired FY2024 grant agreements, HUD will recapture any remaining funds for that grant under program rules and requirements, and LAHSA and LA CoC will not oppose or interfere with any such recapture of funds.
3. HUD will not require LAHSA to transfer FY2022, FY2024, or FY2025 grant agreements for which the period of performance ends on or before June 30, 2027—other than those referenced in paragraphs C.2, and C.5 below—on the basis of the Agency Actions or the facts underlying the Agency Actions.
4. HUD and LAHSA will voluntarily transfer all FY2023, FY2024, and FY2025 grant agreements for which the period of performance ends after June 30, 2027—other than those referenced in paragraphs C.2 and C.5 below—to the County, as follows:
   a. For grant agreements with a period of performance beginning on or before November 30, 2026, the transfer shall occur:

i. As soon as practicable after HUD and the County determine that the County is prepared to receive the transfer, and

ii. In any event, no later than April 1, 2027.

b. For grant agreements with a period of performance beginning on or after December 1, 2026, the transfer shall occur before the period of performance begins;

c. If HUD, the County, LA CoC, and the relevant subrecipient or subrecipients agree, HUD may transfer any grant agreement otherwise subject to this Term to the subrecipient, subrecipients, or other governmental entity within the jurisdiction where the project is located, instead of to the County. Any such transfer will be subject to HUD's standard review process, and HUD will not unreasonably withhold approval for any such transfer.

5. HUD and LAHSA will voluntarily transfer any FY2026 grants awarded to LAHSA, other than those referenced in paragraphs C.3 and C.6 below, to the County as soon as practicable, but prior to execution of the corresponding grant agreement and no later than two weeks following the announcement of the award, provided that:

a. If HUD, the County, LA CoC, and any relevant subrecipient or subrecipients agree, HUD may transfer any grant agreement otherwise subject to this Term to the subrecipient, subrecipients, or governmental entity within the jurisdiction where the project is located, instead of to

the County. HUD will not unreasonably withhold approval for a transfer requested under this provision.

6. The Parties hereby incorporate Appendix A which lists the specific grants to be transferred pursuant to this Agreement and the date by which the transfer will be completed. Where the Parties identify discrepancies in their records regarding the status of particular grants, they agree to work together in good faith to determine which provision of this section of this Agreement will apply to any such grant.
7. All grants transferred herein will thereafter continue to be subject to the terms of the applicable grant agreements and awards, all materials incorporated therein, and all other applicable requirements including those related to HUD's oversight and administration of the relevant grant program.
8. Only for grants transferred during the applicable period of performance, HUD will not hold the County or other transferee liable for any deficiencies or violations by LAHSA in its administration of the grant, including any related acts or omissions by LAHSA that may occur after the transfer, regardless of when discovered. This includes any audit or monitoring findings (including the Single Audit findings), questioned costs, disallowed costs, or repayment obligations attributable to such deficiencies or violations. Nothing in this Agreement prevents HUD from directing the County or any other transferee to take appropriate corrective action as to the administration of the relevant grant; however, such corrective action shall not require the County or any other transferee to

assume financial liability for LAHSA's deficiencies or violations. To the extent applicable, LAHSA will remain financially liable as required to correct any deficiencies or violations in its administration of the grant, even after the grant has been transferred.

9. HUD will allow LAHSA to draw down funds on any grant transferred to reimburse for work performed up to the time of transfer.

**C. Delegation of LA CoC's Administrative Functions**

1. HUD will inform LA CoC of the process required to designate the County as its Collaborative Applicant. LA CoC will submit the required documentation to HUD to allow the County to register with HUD as the Collaborative Applicant for the FY2027 NOFO, and in any event, by no later than February 15, 2027, and HUD will process the transfer no later than March 1, 2027.
2. HUD and LAHSA will voluntarily transfer the FY2025 grant agreement funding LAHSA's activities as Collaborative Applicant in developing a consolidated application to HUD on behalf of the LA CoC, *i.e.*, the grant agreement numbered CA2445L9D002500, to the County by March 1, 2027.
3. HUD and LAHSA will voluntarily transfer any FY2026 grant agreement funding LAHSA's activities as Collaborative Applicant, including what is known to the Parties as a "Planning Grant," to the County as soon as practicable, but no later than March 1, 2027.

4. LAHSA will transfer administration of the HMIS and CES systems to the County by no later than December 31, 2027.
5. HUD and LAHSA will voluntarily transfer the FY2022 and FY2025 grant agreements funding LAHSA's activities as HMIS Lead and CES Management Entity—*i.e.*, the grant agreements numbered CA2103H9D002200, CA0325L9D002517, CA2084Y9D002503, CA2083Y9D002503, CA1195L9D002512, and CA1790D9D002506—to the County as soon as practicable, but no later than December 31, 2027. In the event that the transfer does not occur prior to September 30, 2027 (in the case of grant agreement CA2103H9D002200), October 30, 2027 (in the case of grant agreements CA2083Y9D002503 and CA2084Y9D002503), November 30, 2027 (in the case of grant agreement CA0325L9D002517) or December 31, 2027 (in the case of grant agreements CA1195L9D002512 and CA1790D9D002506), the grants will not transfer and LAHSA will be responsible for closing them out.
6. HUD and LAHSA will voluntarily transfer any FY2026 grant agreements funding LAHSA's activities as HMIS Lead and CES Management Entity to the County as soon as practicable, but no later than December 31, 2027.
7. LAHSA and LA CoC will transfer responsibility for conducting the PIT Count to the County no later than two weeks following the deadline for LAHSA's publication of the report based on the PIT Count to be conducted in January 2027. Nothing herein prevents the County from assuming responsibilities for the

planning and administration of the 2028 PIT Count while LAHSA plans and administers the 2027 PIT Count.

8. HUD will make available Technical Assistance from ICF to support the transition of LAHSA's activities as HMIS Lead and CES Management Entity to the County. HUD will also make available Technical Assistance from Abt to support LAHSA's activities as Collaborative Applicant and as grantee of HUD funds. HUD will produce reports prepared by ICF and Abt, and data relied on in the preparation of those reports, to the Parties and to the Court.

**D. Oversight and Monitoring**

1. HUD will produce reports prepared by ICF and Abt related to the progress of the transition of administrative functions from LAHSA to the County, and data relied on in the preparation of those reports, to the Parties and to the Court.
2. Financial consultants from Guidehouse will conduct a financial oversight review of LAHSA's activities funded by grant agreements directly between LAHSA and HUD until such time as all grant transfers provided for in Appendix A are complete. Guidehouse Inc. will be funded by existing contracts with HUD, subject to applicable law, contractual requirements, and the availability of appropriated funds. HUD retains its existing authority, consistent with applicable federal law and contractual requirements, to terminate or replace Guidehouse Inc. in the event of inadequate performance, failure to satisfy contractual obligations, or other circumstances that HUD determines warrant

such action. Any Party may raise concerns regarding Guidehouse Inc.'s performance and request that HUD consider replacing the contractor. HUD may designate a qualified interim contractor unilaterally to ensure uninterrupted financial oversight. If the parties cannot agree whether to terminate or replace Guidehouse with another contractor, including the interim contractor, within thirty (30) calendar days, either party may present their concerns to the Court, which may provide guidance subject to its jurisdiction and applicable federal law. HUD retains final authority over contractor selection, engagement, and termination, consistent with applicable federal and HUD procurement regulations, and nothing herein shall limit HUD's statutory, regulatory, contractual, or enforcement authorities.

3. As provided herein, HUD will produce reports prepared by Guidehouse Inc. or any interim, or successor contractor, together with the data relied on in preparing those reports to the Parties and to the Court, consistent with applicable law. In the event Guidehouse reports to HUD any anomalies or irregularities identified in its review of LAHSA's activities, HUD will promptly notify the Parties to facilitate any appropriate corrective action.

4. In addition to compliance activities required by HUD statute, regulation, and guidance, LAHSA and LA CoC agree that, until LAHSA no longer engages in any HUD-assisted activity:

    a. No later than ten (10) days in advance of the draw date, for all HUD-funded service provider grants, LAHSA shall submit, on behalf of each proposed draw down for any

expenses claimed against the award, (1) the service provider's invoice (which contains what is being billed against the approved budget); (2) a copy of the relevant portion of the service provider's General Ledger (GL) relating to the grant agreement, which includes its line-by-line itemized expense record; and (3) the Revenue and Expense (R&E) Report, which summarizes the expenses in the GL by category.

b. No later than ten (10) days in advance of the draw date, for all HUD-funded LAHSA grants, LAHSA shall submit, on behalf of each proposed draw down for any expenses claimed against the award, a copy of the relevant portion of LAHSA's GL relating to the grant agreement, which includes its line-by-line itemized expense record; which summarizes the expenses in the general ledger by category.

c. Within thirty (30) days after each draw, LAHSA will use the Grantee Document Exchange (GDX)—or any other system HUD, in its discretion, authorizes LAHSA to use for this purpose—to submit supporting documentation containing enough information for HUD to determine whether each cost charged against the award is allowable under the CoC program. Examples of appropriate supporting documentation are provided in Appendix B to this Agreement, which is fully incorporated herein.

d. As to subparagraphs a, b, and c, HUD may request additional supporting documentation, which LAHSA will

provide without unreasonable delay. HUD will not prevent LAHSA from making those draws based solely on the pendency of a request from HUD for additional supporting documentation. Subject to the Dispute Resolution process outlined in Section V of this Agreement, HUD may take any appropriate action under existing authorities to address repeated failure to provide requested supporting documentation, including a pause in draws on a particular grant.

e. LAHSA is responsible for responding to any requests from HUD for documentation supporting draws made by LAHSA, even if the relevant grant agreement has been transferred to the County pursuant to this Agreement;

f. Within two weeks of the Effective Date of this Agreement, LAHSA shall produce to HUD a copy of all reports, whether draft or final, of any audit or other review related to any federally-assisted activity with proposed or open findings that have not been finalized and resolved as of the Effective Date of this Agreement.

5. In addition to compliance activities required by HUD statute, regulation, and guidance, LAHSA and LA CoC agree that:

a. LA CoC will ensure that the County complies with the requirements of paragraphs D.4.a-D.4.d above until either the end of the period of performance of all CoC grants for FY2025 and earlier fiscal years' CoC grants transferred to the County from LAHSA under the terms of this Agreement or the Agreement terminates, whichever is

earlier, provided that, if HUD implements and makes applicable to LA CoC the HUD Unified Grant System (HUGS) during the period covered by this subpart, the County's compliance with the requirements applicable to HUGS will satisfy the obligations imposed under this subpart; and

b. By March 1, 2027, LAHSA will request from its FY2025 subgrantees the names and identifying information of the Principals and Senior Management and provide the information it receives to HUD. In its production to HUD, LAHSA will identify any subgrantees that have not fully responded to this request.

c. By March 1, 2027, LAHSA will request each of its subgrantees for FY 2025 provide it with copies of any background checks of the Principals and Senior Management identified pursuant to the provision above that have been conducted by the subgrantee and/or LAHSA. LAHSA will produce a copy of all such background checks to HUD, consistent with applicable law and confidentiality requirements.

6. The Parties will prepare quarterly reports for the Court, submitted no later than the last day of the month following the end of each quarter, outlining the Parties' progress towards fulfilling each Party's obligations under this Agreement, including completing the transition of administrative functions, including grant administration, away from LAHSA. The joint status reports will include any reports and supporting data

produced by ICF, Abt, and Guidehouse in their provision of technical assistance and financial oversight.

**E. Termination of LAHSA's Suspension and Further Proceedings**

1. LAHSA will not participate or seek to participate, directly or indirectly, in any activities funded directly or indirectly with HUD funds or in any programs administered by HUD, after the grant transfers described herein are complete, other than those expressly provided for herein, provided that LAHSA may receive pass-through funds from local or state government partners under non-CoC HUD programs, including the Emergency Solutions Grants (ESG) program, for work performed up to, but no later than December 31, 2027.
2. The System for Award Management (SAM.gov) is the official U.S. government website for posting records of exclusions, including suspensions. As of the execution of this Agreement, SAM.gov shows an exclusion for LAHSA that was activated on June 11, 2026, and terminated on August 13, 2026. That record of exclusion shows an "Inactive" status. HUD will not restore LAHSA's suspension that was activated on June 11, 2026, in SAM.gov or alter the dates thereof.
3. LAHSA will withdraw its request for the OHA Hearing contesting the June 11, 2026, suspension, no later than one week after the Effective Date.
4. HUD will not seek any suspension or debarment of LAHSA for any issues referenced in (1) the June 11 Letter, or (2) HUD's Complaint in the OHA Hearing.

5. HUD will notify HUD OIG of this Agreement and of its terms no later than one week after the Effective Date. HUD's notification to HUD OIG will not constitute a request that the OIG's Investigation should, could, or will be closed. HUD OIG is an independent oversight and investigative office, with authority pursuant to the Inspector General Act of 1978, codified at 5 U.S.C. §§ 401-424.
6. LAHSA and LA CoC agree to continue to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement, including subrecipients (and their agents) of funds under HUD programs. Upon reasonable notice, LAHSA and/or LA CoC shall encourage the cooperation of their officials, agents, subrecipients, subrecipients' agents, employees and servants, and shall use its best efforts to make available, and encourage, the cooperation of former officials and agents for interviews and testimony, consistent with the rights and privileges of such individuals. LAHSA and LA CoC further agree to continue to cooperate with requests of the United States for documents, data, reports, memoranda of interviews, and records in their possession, custody, or control concerning any investigation of HUD-assisted activity.

## IV. RELEASE: SCOPE AND EFFECT OF RELEASE

### A. Matters Released

1. As of the Effective Date, LAHSA and LA CoC, on behalf of themselves, their heirs, executors, administrators, representatives, attorneys, successors, assigns, and agents, and

any persons they represent, by operation of any final judgment entered by the Court, fully, finally, and forever release, relinquish, and discharge the Defendants, and their officers and employees, from (a) the Settled Claims, and (b) any claim for attorneys' fees, costs or expenses incurred in the Actions through the Effective Date.

2. As of the Effective Date, Defendants releases LAHSA and LA CoC from any administrative action pursuant to 2 C.F.R. Part 180 or 2 C.F.R. Part 2424, to the extent the claim or action arises from any of the following matters: (a) LAHSA's suspension noticed in the June 11 Letter, exclusion, eligibility, or status as a participant or principal in covered transactions, including any exclusion record in SAM.gov; (b) the remedial measures noticed in the June 18, 2026 Letter; (c) any certification, representation, or disclosure about that status made by or on behalf of LAHSA or LA CoC, including in the FY2026 consolidated application or in any request for payment; (d) HUD's execution of grant agreements with, award of funds to, or payment of funds to LAHSA under the PI Order, as modified by the Ninth Circuit; and (e) actions taken by LAHSA or LA CoC in good-faith compliance with the PI Order or this Agreement.

**B. Matters Not Released**

1. Notwithstanding anything else in this Section IV, nothing in this Agreement releases, waives, or impairs any of the following:
    a. Any claim or motion to enforce this Agreement under Section V, including recovery of attorneys' fees and costs to the extent otherwise authorized by law.

b. Any claim arising from acts or omissions occurring after the Effective Date.

c. The right of LAHSA or LA CoC to contest, in any forum, any future agency action, even if that action is based in whole or in part on facts underlying the Agency Actions or HUD's Complaint in the OHA Hearing. This includes any suspension, proposed debarment, debarment, grant termination, disallowance, recapture, imposition of special conditions, or other administrative, civil, or enforcement action.

d. Notwithstanding the releases given in this Agreement, or any other term of this Agreement, all other claims of the United States are specifically reserved and are not released, including any liability based upon obligations created by this Agreement.

## V. DISPUTE RESOLUTION

**A.** The Parties agree to work cooperatively with one another and in good faith and agree to use their best efforts to effectuate the purposes of this Agreement, including acting in a timely manner to take all steps necessary to effectuate the transfer of grants from LAHSA to the County by the agreed-upon deadliness outlined in this Agreement.

**B.** The Parties agree to work together to resolve informally any differences regarding interpretation of and compliance with this Agreement prior to bringing such matters to the Court for resolution.

**C.** Should counsel for any Party believe in good faith that another Party has violated the provisions of this Agreement, such counsel shall promptly

notify counsel for the opposing Party, in writing, of the specific grounds upon which noncompliance is alleged (the Notice of Dispute).

**D.** Any allegations of violations of this Agreement must be substantiated in the Notice of Dispute with specific detailed information about the alleged violations that is sufficient to enable the responding Party to investigate and respond.

**E.** The responding Party shall respond in writing to a Notice of Dispute within a reasonable period of time, but no later than ten (10) calendar days, and provide the responding Party's position and any action it has taken or intends to take to address the alleged non-compliance. The Parties shall then meet and confer regarding this issue within three (3) business days of the response.

**F.** If the dispute cannot be resolved within five (5) business days of the date of the meet and confer, the complaining Party may move to enforce the terms of this Agreement through a Motion to Enforce. The Court shall then resolve the dispute or order such further briefing, hearing, or other procedure that it deems necessary or appropriate. The Court in this proceeding shall have the power to award such relief and issue such judgment as the Court deems proper.

**G.** In the event that any Party determines that disputes between the Parties regarding this Agreement or the need to ensure compliance with the Agreement warrants the appointment of a third party monitor or special master, after exhausting the dispute resolution meet and confer provisions outlined in this section, that Party may seek the appointment by this Court of a third party monitor or special master.

1. Prior to seeking the appointment of a monitor or special master, the Parties agree to meet and confer in good faith

about the identity of the special master or monitor, should one be appointed.

2. In the event the Parties are able to reach agreement as to the identify of the proposed special master or monitor, should one be appointed, the party seeking the appointment of the monitor will seek the appointment of the agreed-upon monitor or Special Master.

## VI. REQUIRED APPROVALS, TERMINATION OF SETTLEMENT AGREEMENT, AND COURT JURISDICTION

A. This Agreement shall become effective upon the Effective Date.

B. The Parties shall forthwith jointly file a stipulation, attaching this Agreement as Exhibit A andrequesting that the Court enter this Agreement as a stipulated order and dismiss Plaintiff's and Plaintiff-Intervenor's claims. The Parties will request that the Court retain jurisdiction over this action to enforce the terms of this Agreement.

C. A final resolution of the Appeal must be authorized by appropriate officials of the United States Department of Justice. *See* 28 C.F.R. Part 0, Subpart Y, and Appendix thereto. HUD will request the necessary approval to file a motion to dismiss the Appeal, from appropriate officials of the United States Department of Justice. If approval to dismiss the Appeal is authorized, HUD will move to dismiss the Appeal, no later than one week after the Effective Date.

D. The Agreement and the Court's jurisdiction to enforce the Agreement shall terminate by its own terms when LAHSA has ceased all HUD-Assisted Activity. The Parties will jointly notify the Court within 10 days of the termination of the Agreement that it has terminated.

E. If the Court does not approve this Agreement, or the Court's approval of the Agreement is reversed, vacated, or terminated by a Court of Appeals, then the Parties' good-faith adherence to the terms of this Agreement prior to reversal, vacatur, or termination shall not be considered unlawful.

F. Each Party shall have the right to terminate this Agreement if

a. the Court declines to approve this Agreement or any material part of it;

b. the Court declines to dismiss the Settled Claims; or

c. the Court of Appeals or the United States Supreme Court reverses, vacates, or modifies the Agreement in any material way. Notice of termination must be provided in writing (Termination Notice) to all other Parties and within thirty (30) days of the event triggering the right to terminate.

G. Except as otherwise provided herein, if the Agreement is terminated or modified in any material respect or fails to become effective for any reason, then the Agreement shall be without prejudice and none of its terms shall be effective or enforceable; the Parties shall be deemed to have reverted to their respective statuses in the District Court Action and OHA Hearing as of the date and time immediately preceding entering into the Agreement; and the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered. If the Agreement is terminated or modified in any material respect, the Parties shall be deemed not to have waived, not to have modified, or not to be estopped from asserting any existing or additional defenses or arguments otherwise available to them.

## VII. EFFECT OF THIS AGREEMENT

**A.** This Agreement, whether or not executed, and any proceedings taken pursuant to it:

**1.** Shall not be construed to waive, reduce, or otherwise diminish the authority of the Defendants to enforce the laws of the United States against LAHSA and LA CoC, consistent with the Constitution and laws of the United States, and applicable regulations;

**2.** Shall not be offered or received against the Defendants as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission by any of the Defendants of the truth of any fact alleged by Plaintiff or by Plaintiff-Intervenor or the validity of any claim that had been or could have been asserted in the District Court Action or OHA Hearing, or in any other litigation, or the deficiency of any defense that has been or could have been asserted in therein, or of any liability, negligence, fault, or wrongdoing of the Defendants; or any admission by the Defendants of any violations of, or failure to comply with, the Constitution, laws or regulations; and

**3.** Shall not be offered or received against any of the Parties as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, nor shall it create any substantive rights or causes of action against any of the Parties to this Agreement, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate or enforce the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, each Party may refer to it and rely upon it to effectuate the liability protection granted them hereunder.

## VIII. ATTORNEYS' FEES AND COSTS

Except as otherwise provided in this Agreement, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

## IX. ADDITIONAL PROVISIONS

A. **Representations and Warranties.** Each signatory hereto represents and warrants that such person has authority to bind the Party for whom such person acts.

B. **Execution in Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same Agreement. A facsimile or other duplicate of a signature (including an electronic signature such as DocuSign or an Adobe digital signature certificate) shall have the same effect as a manually executed original. This Agreement shall be deemed executed on the date the Agreement is signed by all of the undersigned.

C. **Extension of Time.** The Parties reserve the right, by agreement and subject to the Court's approval, to grant to each other any reasonable extension of time that might be needed to carry out any of the provisions of this Agreement.

D. **Choice of Law.** This Agreement shall be governed by and construed in accordance with the laws of the United States of America.

E. **Entire Agreement; No Oral Modification.** The terms and conditions set forth in this Agreement, including all appendices, constitute the complete and exclusive statement of the agreement between the Parties relating to the subject matter of this Agreement, superseding all previous negotiations

and understandings, and may not be contradicted by evidence of any prior or contemporaneous agreement. Any amendment or modification of the Agreement must be in a writing signed by counsel for all Parties.

F. **Advice of Counsel.** The determination of the terms of, and the drafting of, this Agreement have been by mutual agreement after negotiation, with consideration by and participation of all Parties and their counsel. Whereas all Parties have contributed substantially and materially to the preparation of this Agreement, it shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore be construed more strictly against one Party than another.

G. **Voluntary Agreement:** Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

H. **Public Disclosure:** All Parties consent to disclosure by any Party of this Agreement, and information about this Agreement that is not subject to an assertion of privilege or protective order, to the public.

I. **Appendices.** The Parties agree that Appendix A and Appendix B to this Agreement are material and integral parts thereof and are fully incorporated herein by reference.

J. **Benefit of Agreement:** This Agreement is intended to be for the benefit of the Parties only.

K. **Successors:** This Agreement is binding on the Parties’ successors, transferees, heirs, and assigns.

L. **Government Operating Status:** Any and all duties and obligations undertaken by Defendants are contingent on the relevant component of the federal government being fully funded and in an operating status.

IN WITNESS WHEREOF, the parties, by and through their authorized counsel, intending to be legally bound, have executed this Agreement on the dates shown below.

Dated: November 12, 2026

LOS ANGELES CONTINUUM OF CARE

By: ______________________________
Ben Kay

IN WITNESS WHEREOF, the parties, by and through their authorized counsel, intending to be legally bound, have executed this Agreement on the dates shown below.

Dated: November 12, 2026

LOS ANGELES HOMELESS SERVICES AUTHORITY

By: ______________________________
Gita O'Neill

IN WITNESS WHEREOF, the parties, by and through their authorized counsel, intending to be legally bound, have executed this Agreement on the dates shown below.

Dated: November 12, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

*/s/ Alexander L. Farrell*
ALEXANDER L. FARRELL
Assistant United States Attorney

*Attorneys for Defendants*